# Parker *v.* The State.

## *Indictment for Murder.*

1. *Homicide by aggressor, after attempted retreat.*—In a case of homicide, the general rule is, that the aggressor can not urge in his justification a necessity caused by his own wrongful act; but an exception to this general rule is, that if the aggressor withdraws from the conflict in good faith, after having provoked it, and clearly announces his desire for peace, but is pursued by his adversary, his right to take life in self-defense revives.

2. *Same; charge to jury as to intent.*—When the original aggressor invokes this exception to the general rule, the question of his good or bad faith in retreating should generally be submitted to the jury, in con-

[Parker v. The State.]

nection with the fact of retreat itself, especially when there is any room for conflicting inference as to the intent; and a charge which withdraws this question from the consideration of the jury, is properly refused.

3.  *Charge as to self-defense.*—A charge asserting the right of self-defense in a case of homicide, on account of a present danger, real or apparent, to life or limb, but ignoring the question as to who was the original aggressor, is properly refused.

FROM the Criminal Court of Jefferson.

Tried before the Hon. S. E. GREENE.

The defendant in this case, Scott Parker, was indicted for the murder of Simon Anderson, by shooting him with a gun; was convicted of murder in the second degree, and sentenced to the penitentiary for the term of fifty years. Both the defendant and the deceased were freedmen. The difficulty between them occurred in May, 1889, on the premises of the Coaldale Mining Company, in the presence of several persons, who testified, in substance, that when the parties met, being about ten or twelve feet apart, they began to curse and abuse each other, the defendant having his gun in his hand, and the deceased having his hand on his pistol pocket; that the defendant threw up his gun, and pulled the trigger, but the "gun snapped;" that he then retreated backwards very slowly, while he put new caps on his gun, still holding it in position to shoot, and followed by the deceased; that after the defendant had thus moved backwards about forty or fifty feet, followed by the deceased, cursing and abusing each other, the deceased said, "*I'll take no more from you*," and pulled out his pistol, when the defendant fired, and killed him instantly. The defendant introduced evidence of threats made against him by the deceased, on the morning of the difficulty, declaring his intention to kill defendant that day, which threats were communicated to defendant about two hours before the parties met; and he testified in his own behalf to other threats previously made to him in person by the deceased.

The defendant requested the following charges in writing, and duly excepted to their refusal:

(1.)  "Even if the jury should find from the evidence that the defendant was in the wrong in the first instance, yet a space for repentance is always open; and when a combatant withdraws as far as he can without putting himself in greater peril, and his adversary pursues him, if the taking of life becomes necessary to save his own, he will be justified."

(2.)  "When a person has reasonable cause to apprehend

a design on the part of another to do him great bodily harm, and there is cause to apprehend immediate danger, he may act upon appearances, and may kill his assailant, if necessary to avoid the danger."

(3.) "Although the jury may believe from the evidence that the defendant first drew his gun on the deceased, yet, if they further believe from the evidence that afterwards, before the fatal shot was fired, he attempted to withdraw from the conflict by retreating, or otherwise, then the right of the deceased to follow him up, and to use or threaten violence against him, ceased; and if the deceased did not then desist from attempting to use violence towards the defendant, then the defendant's right to defend himself revived; and if he then found himself in apparent danger of losing his life, or of sustaining great bodily injury at the hand of the deceased, he had the same right to defend himself that he would have had if he had not originally commenced the conflict."

(4.) "Justifiable homicide is the killing of a human being in self-defense; and if the jury believe from the evidence that the defendant, at the time he shot and killed Anderson, had reasonable cause to believe, from the acts, threats, and demonstrations of the deceased, that his life was in peril, or that the deceased would inflict great bodily harm upon him, then he was justifiable in shooting the deceased; and the law did not require that he should wait until struck or wounded by the deceased, but, if he had reasonable cause to believe the same, he was justifiable in shooting, and the jury must acquit him."

(5.) "If a person's life is threatened, and there is imminent danger of losing his life, or of suffering great bodily harm, the person thus endangered will be justifiable in defending himself, even to the taking of his assailant's life, although the danger be only apparent. A person need not be in actual imminent peril of his life, or of great bodily harm, before he may slay his assailant; it is sufficient if, in good faith, from the facts as they appear to him at the time, he has a reasonable belief that he is in such imminent peril."

J. J. ALTMAN, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

SOMERVILLE, J.—The general rule has often been declared, that the accused, charged with homicide, must

always be reasonably free from fault in having provoked or brought on the difficulty in which the killing was perpetrated; and if he was the aggressor, he can not be heard to urge, in his own justification, a necessity for the killing, which was produced by his own wrongful act.—*Storey's Case*, 71 Ala. 330.

This rule, however, is not of absolute and universal application. An exception to it exists in cases where, although the defendant originally provoked the conflict, "he withdraws from it in *good faith*, and clearly announces his desire for peace." If he be pursued after this, his right of self-defense, though once lost, revives. "Of course," says Mr. Wharton in referring to this modification of the rule, "there must be a *real and bona fide* surrender and withdrawal on his part; for, if there be not, then he will continue to be regarded as the aggressor."—1 Wharton's Cr. Law (9th Ed.), § 486. The meaning of the principle is, that the law will always leave the original aggressor an opportunity to repent, before he takes the life of his adversary. Where, therefore, as said by Mr. Bishop, "a combatant *in good faith* withdraws as far as he can, really intending to abandon the conflict, and not *merely to gain fresh strength*, or some new advantage for an attack, but the other will pursue him, then, if taking life becomes inevitable to save life, he is justified. But a mere colorable withdrawal avails nothing."—Bishop's Cr. Law (7th Ed.), § 871.

This exception to the general rule under discussion we recognize as a just one, and we fully approve it. But due caution must be observed by courts and juries in its application, as it involves a principle which is very liable to abuse. The question of the *good* or *bad faith* of the retreating party is of the utmost importance, and should generally be submitted to the jury in connection with the fact of retreat itself, especially where there is any room for conflicting inferences on this point from the evidence.

The first and third charges requested by the defendant were faulty, in withdrawing this question from the consideration of the jury, and they were, therefore, properly refused.—Sackett's Instruction to Juries, 530.

The other three charges were entirely misleading, in ignoring the question as to who was the original aggressor in the conflict, and no facts are hypothesized which tend to bring the case within the exception above stated.—*Storey's Case*, 71 Ala. 330, *supra*.

[Lowe v. The State.]

We discover no error in the record, and the judgment is affirmed.