# Bostic *v.* The State.

### *Indictment for Murder.*

1. *Homicide in prevention of felonious assault on third person.*—To justify the taking of human life in defense or prevention of a felonious assault on a third person, that person must be in a condition to invoke the doctrine of self-defense; if he provoked or brought on the difficulty, he must have clearly manifested a desire and intention to retire from the conflict; and even then, the person interfering in his behalf would not be justifiable, if he struck the fatal blow in pursuance of a previous design, declared or formed, to assist his friend in the event of a personal difficulty.

2. *Abstract charges* are properly refused. without regard to the correctness of the principle stated.

3. *Abstract question to expert witness.*—On cross-examination of a physician, or other expert witness, it is not permissible to ask him a question based on a postulate which is not supported by any evidence in the case.

From the Circuit Court of Limestone.

Tried before the Hon. Henry C. Speake.

The defendant in this case, Richard Bostic, was indicted jointly with John Puryear for the murder of Jesse Brock, "by striking him on the head with a rock, stick, or other hard substance to the grand jury unknown;" was convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of five years. The opinion states the circumstances attending the killing. The defendant requested the following charges in writing, and duly excepted to their re-

[Bostic v. The State.]

fusal: (1.) "If the jury believe the evidence, they must acquit the defendant." (2.) "If the jury believe from the evidence that the defendant killed Jesse Brock under a well-grounded and honest belief, created by all the circumstances, that it was necessary for him to kill the deceased to prevent the deceased from forcibly and feloniously taking the life of John Puryear, then he can not be convicted of murder in either degree." (3.) "If the jury believe from the evidence that the defendant killed the deceased under a well-grounded and honest belief, created by all the circumstances, that it was necessary for him to do so to prevent the deceased from forcibly and feloniously taking the life of John Puryear, then he is not guilty, and their verdict should be for acquittal." (4.) "If you believe from the evidence that the defendant killed the deceased under a well-grounded and honest belief, created by all the circumstances, that it was necessary for him to kill the deceased to prevent the deceased from killing, without just cause, John Puryear, then the defendant is not guilty, and your verdict should be for acquittal." (5.) "Although a person originally provoked the conflict, if he withdrew from it in good faith. and was afterwards pursued by the other person, his right of self-defense revives." Other exceptions were also reserved.

W. T. SANDERS, and W. H. TURRENTINE, for the appellant, cited *Carroll v. State,* 23 Ala. 28; *Oliver v. State,* 17 Ala. 598; *Storey v. State,* 71 Ala. 329; *Dill v. State,* 25 Ala. 20; 26 Ala. 31; 4 Bla. Com. 184; 1 Russ. Crimes, 513; 3 Green. Ev. 115; *Bonner v. State,* 29 Tex. App. 223; *Parker v. State,* 88 Ala. 4; 12 Ky. L Rep. 161.

WM. L. MARTIN, Attorney-General, for the State, cited *Gibson v. State,* 91 Ala. 64.

STONE, C. J.—It is said in 4 Bl. Com. 213, that "homicide committed for the prevention of any forcible and atrocious crime is justifiable by the law of nature, and also by the law of England, as it stood so early as the time of Bracton, and as it was declared by statute, 24 Hen. 8, c. 5. If any person attempts a robbery or murder of another, or attempts to break open a house in the night (which extends also to an attempt to burn it), and be killed in such attempt, the slayer shall be acquitted and discharged." Greenleaf states the doctrine substantially the same way.—3 Greenl. Ev., § 115.

In *Gray v. Coombs,* 7 J. J. Mar. (Ky.), 48, this subject was discussed, and the authorities cited. And the subject has

been frequently considered in this. State. The principle declared is somewhat analogous to that laid down in the older books. In *Oliver's case*, 17 Ala. 584, opinion by DARGAN, C. J., is this language: "The law, it is true, will justify the taking of life, when it is done from necessity to prevent the commission of a felony," &c. See, also, *Dill v. State*, 25 Ala. 15; *Noles v. State*, 26 Ala. 31; *Simpson v. State*, 59 Ala. 1; *Storey v. State*, 71 Ala. 329.

Modern decisions have hedged this principle about with some modifying qualifications. If the defense be that the blow was struck to prevent the homicide of another, then that other, as well as the actor, must be in a condition to invoke the doctrine of justifiable defense. Neither he who provokes a difficulty, nor his voluntary helper, can with impunity resist to extreme results the assault he has provoked, unless he has clearly retired from the conflict; and to restore him to the full measure of *se defendendo*, his conduct must plainly show that his purpose has ceased to be hostile.—*Gibson v. State*, 91 Ala. 64; *Parker v. State*, 88 Ala. 4.

After night-fall, the defendant and Puryear, with two others, went together to the house in which the difficulty occurred. Before reaching the house, they learned that deceased was there. Soon after entering the dwelling, the altercation commenced. Its first introduction was an inquiry by Puryear, addressed to Brock, asking him why it was that he, Brock, had spoken of him, Puryear, in the manner he had. He answered, that what he had said would stand. Very soon Puryear addressed Brock in angry and offensive language, whereupon the latter drew a pistol, and attempted to shoot Puryear. He fired once, the ball passing through Puryear's clothes, and was pursuing him, snapping his pistol at him, but it did not fire. Puryear ran out at the door, Brock pursuing him, when the defendant, Bostic, attempted to disarm him. While he was grappling for the pistol, Brock was. struck on the head with a hard substance, probably a rock, which felled him to his knees, and the combat then ceased. Three days afterwards Brock died, and the attending physician gave it as his opinion that the blow on the head caused his death. Up to this point there was no material discrepancy in the testimony.

On some very material inquiries the testimony is irreconcilable. Some witnesses testified that, when Puryear and his friends were approaching the house in which the difficulty occurred, and after they learned Brock was there, Puryear remarked, "I expect we will have it to night," and that Bostic said, 'if he did, he would stand up to him.' Bostic, in his testimony, denied this. There was testimony that Bostic struck

the blow which proved fatal, while he and some other witnesses testified that he did not. And there was testimony that, when Puryear fled from the house, he seized a pole, and was returning into the house to renew the encounter. On this question the testimony was by Puryear himself, and there was no testimony that, after the combat commenced, Puryear made any remark of any kind. His intention in leaving the house must, therefore, be gathered from what he did, and not from any thing said; for he said nothing. We have stated this much of the testimony, because it exerts a material influence on some of the instructions requested by the defendant.

Several charges were requested, invoking the doctrine referred to above—the right of a mere stranger to interfere, even to extreme results, to prevent the commission of a felony attended with force. The charge so asked which most nearly comes up to legal requirements, is in the following language : "If you believe from the evidence that the defendant killed the deceased, Jesse Brock, under a well-grounded and honest belief, created by all the circumstances, that it was necessary for him to kill the deceased to prevent the deceased from killing, without just cause, John Puryear, then the defendant is not guilty, and your verdict should be for acquittal."

It will be remembered that there was testimony in this case that John Puryear commenced the conversation, and used the first insulting language, which brought on the difficulty. There was also testimony that defendant, Bostic, had promised Puryear to stand up to him, should a difficulty ensue. Each of these facts, if believed, exerted an important bearing on the inquiry of defensive resistance, whether made or attempted by Puryear or Bostic. As to the former, Puryear, it imposed on him the duty of withdrawing from the conflict by manifest acts, or positive language, one or both, before he could place himself on the solid ground of self-defense, with the rights which pertain thereto. And as to the latter, Bostic, it was not enough that Puryear should have placed himself on the defensive ground, as stated above. Certain conditions as to Bostic himself were necessary before he would be justifiable in striking to save Puryear from the threatened violence, which his own insulting language had provoked. Bostic was not authorized to strike in defense of Puryear, until the latter had clearly manifested a desire and purpose to withdraw from the combat; nor even then, if the blow was struck pursuant to a formed design and purpose to stand up to him, in the event a personal encounter ensued. The words, *without just cause*, are neither clear enough, nor full enough, to authorize the giving of the charge asked, under the testimony found in this

[Bostic v. The State.]

record. For reasons still stronger the other kindred charges were rightly refused.

Another charge asked by defendant was in this language: "Although a person originally provoked the conflict, if he withdrew from it in good faith, and clearly announced his desire for peace, and was afterwards pursued by the other person, his right of self-defense revives." The presiding judge refused this charge, giving as a reason that it was abstract. Ignoring all other inquiries involved in this charge, there was not a semblance of proof that, after the encounter was entered upon, or after Puryear uttered the insulting language, he announced any desire for peace. This, of itself, rendered the charge abstract.—3 Brick. Dig. 109, § 33; *Ib.*, 113, § 106.

Dr. Wilkerson attended the deceased, Brock, after he was wounded, and testified that he died of concussion of the brain, caused, as he believed, by the wound he had received. He testified that, after being wounded, he had been twice removed from one place to another, and "that it was drizzling at the time he was moved." On cross-examination, the doctor was asked two questions, substantially the same, namely: "If it was not possible that removing deceased in his condition about, in bad weather over a rough country, caused his death?" The second question was, "Might not the moving deceased in inclement weather over rough roads, deceased being exposed while he was in a condition of mental excitement resulting from the wound, have caused his death?" These questions were objected to by the prosecution, the objections sustained, and the defendant excepted. This exception raises, in substance, the same question as that considered above. The record contains no testimony that the removals of the deceased were over a "rough country," or over "rough roads." Without considering any other ground of objection to the question, we are forced to hold the objections well taken, because one of the postulates on which the opinion of the physician was invoked, had no testimony to support it.

There is nothing in the other questions raised.

Affirmed.