# Stillwell v. The State.

### *Indictment for Murder.*

1. *Party renewing difficulty after his assailant has withdrawn can not invoke self-defense.*—One may be at fault in bringing on a difficulty, but if he withdraws from it in good faith and is departing, and the other party pursues him, and brings on the difficulty again by his own fault, the latter can not invoke the doctrine of self-defense, but will be treated as an aggressor *ab initio.*

2. *Same; case at bar.*—On a trial for murder, evidence that deceased provoked the quarrel by striking defendant; that defendant thereupon picked up an iron poker to strike deceased, was prevented from doing so, and compelled to lay it down; that defendant, after deceased had started away (intending, in good faith, to depart), picked up the poker again, followed him, and, on his turning about with an open knife in his hand, when overtaken, struck the fatal blow with the poker,—warrants an instruction denying defendant the right to invoke the doctrine of self-defense.

3. *Provocation as extenuation of homicide.*—No degree of provocation will extenuate a homicide, the result of a cool, deliberate judgment and previous malignity of heart.

4. *"Cooling time" is question for court.*—What constitutes a sufficiency of cooling time is a question for the court and not for the jury.

5. *Charge as to deadly weapon.*—A charge "that the law implies malice from the use of a deadly weapon," without the qualifying words "unless the evidence which proves the killing rebuts the presumption of malice" is not erroneous when the testimony shows that the use of the deadly weapon was the result not merely of passion but of revenge or malice.

6. *Argumentative charges.*—It is not error for the court to refuse to give charges that are argumentative or misleading.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. J. W. FOSTER.

The appellant, Minzy Stillwell, was indicted and tried for the murder of Sam Raiford, was convicted of murder in the second degree, and sentenced to the penitentiary for ten years.

On the trial, as is shown by the bill of exceptions, it was shown that the deceased came to his death from the effects of a blow which fractured his

[Stillwell v. The State.]

skull, the blow being struck by the defendant. The testimony for the State further tended to show that the defendant and the deceased, together with other men, were in a bar room in the city of Troy; that the deceased, who was a man about 35 years old, was drinking; that the defendant, a boy about 18 years old, asked the deceased to give him a piece of paper that was lying on the counter in the bar; that to this request the deceased replied: "Do you think I am a d—n fool; I'll hurt some of you d—n kids if you fool with me;" that thereupon the defendant replied, "well, I'll get it myself:" that as he was passing by the deceased to get the paper, the deceased struck the defendant on the head with a piece of the lid of a goods box about 4 inches wide, about 2 feet long and $\frac{1}{4}$ of an inch thick; that thereupon the defendant picked up a rod of iron used as a poker, which was about 3 or 4 feet long, 1 inch square, and started to strike the deceased with it, but was prevented from doing so by one of the persons standing near; that then the deceased started towards the front door; that when he had gone about 20 feet, the defendant seized the piece of iron and started after him with the statement: "He hit me and I'll hit him;" and as the deceased turned his head, the defendant struck him with the piece of iron, fracturing his skull, from the effects of which blow the deceased died in about 7 days.

The testimony for the defendant tended to show that after the deceased struck the defendant with the piece of plank, the deceased drew his knife; that as the deceased started out of the bar room the defendant picked up the poker, and as the deceased turned on him with his knife drawn the defendant struck him with the poker. The witnesses for the State testified that they did not see a knife in the possession of the deceased. Upon the introduction of all the evidence, the court, in its general charge to the jury, among other things, instructed them as follows: "That if the deceased had abandoned the fight and was leaving the scene of the difficulty, and the defendant followed him, and on being overtaken the deceased turned on the defendant, and the defendant then struck the fatal blow, he can not invoke the doctrine of self-defense, although the deceased had a knife in his hand." To the giving of this portion of the court's general charge the defendant duly excepted, and also sepa-

rately excepted to the court's giving, at the request of the State, the following written charges: (1. "The court further charges the jury that the law implies malice from the use of a deadly weapon." (2.) "The court further charges the jury that the law presumes that a man intends the natural or probable results of his act." (3.) "The court further charges the jury that if the deceased had abandoned the combat, and defendant overtook him after he had gone and struck him a blow from which death ensued, then he can not invoke the doctrine of self-defense." (4.) "The court further charges the jury that the charges asked by defendant, and given by the court, are not in conflict with the oral charge given by the court." The defendant then asked the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (A.) "A killing in sudden passion, if not otherwise excusable, excited by sufficient provocation, without malice, is manslaughter, not because the law supposes that passion makes him (the slayer) unconscious of what he is about to do, and stripped the act of killing of an intent to commit it, but because it presumes that passion disturbed the sway of reason, and made him regardless of her admonitions. It does not look upon him as temporarily deprived of intellect, and therefore not an accountable agent, but as one in whom the exercise of judgment is impeded by the violence of excitement, and accountable as an infirm human being, and if tested by these rules, the jury can not believe beyond a reasonable doubt, from the evidence, that the defendant struck with malice aforethought, then he is not guilty of murder." (B.) "The court charges the jury that if there was a provocation and that the same was sufficient, so that the defendant at the time he was struck was thrown under a transport of passion, then the defendant did not have sufficient cooling time from then to the time when he struck deceased, and that he could not be guilty of murder."

M. N. Carlisle for the appellant.—It was a question for the jury to determine, with what intent the defendant followed the deceased. He may have done so to chastise him only. When he started in pursuit, he said: "He has hit me and I will hit him." Again, if this

was the intent, and when deceased turned on him with the knife, it might then appear that he had to strike, even to the taking of the life of his assailant, to save his own; and as the deceased originally brought on the difficulty, we think under the facts of this case the court in that part of its oral charge, invaded the province of the jury. It took from the consideration of the jury the question of intent. This argument applies also to written charge given for the State, No. 7. The evidence in the case shows strongly that the defendant struck under such circumstances as to make his offense manslaughter, and also the jury might have concluded that he struck in self defense, or struck under the heat of blood without the intent to kill, which would have made his offense manslaughter in 2nd degree. But the court charged the jury in these words, "The court further charges the jury that the law implies malice from the use of a deadly weapon," but did not add the qualifying clause, "unless the evidence which proves the killing rebuts the presumption."—*Hornsby v. State*, 94 Ala., 55.

In this case it is expressly decided that if there is evidence going to show that defendant struck in self defense, or that he struck in the heat of passion and without malice, to give such charge without such qualifying words is error.—*Handley v. State*, 55, Ala., 37; *Mitchell v. State*, 60 Ala., 28; *Gibson v. State*, 87 Ala., 12; *Jordan v. State*, 79 Ala., 9.

Under the facts of this case the 2nd written charge given for the State is subject to the same objection. If there was a conflict between the general charge and the charges asked by the defendant, or an apparent conflict, the court ought to have corrected or explained the same, and not to have given the charge that there was none.

Charge A, asked by defendant, ought to have been given. It is a correct copy from the opinion of the court in the case of *Smith v. State*, 83, Ala., 26, which clearly gives the law as to the effect of a sudden transport of passion upon the reason of defendant. Charge B raises the question as to whether or not cooling time is a question of law or fact. We cannot find that this question has ever been decided by our Supreme Court. But the principle is clearly laid down, where the judges decided what was or was not sufficient cooling time in several cases.—2nd Roscoe's Criminal Evidence, 777,

WM. C. FITTS, Attorney-General, for the State.

The exceptions in this cause are confined to charges given and refused.

With regard to the exception to the oral charge see 1 Whar. Cr. Law 9th Ed. Par. 486; Bishop's Cr. Law 7th Ed. Par. 871; *Parker v. The State*, 88 Ala. 4.

There was no error in the charge requested by the solicitor as to malice.—2 Whar. Cr. Law, 7th Ed. Par. 988 and 994; *Williams v. The State*, 77 Ala. 53; *Lane v. The State*, 85 Ala. 11; *Young v. The State*, 95 Ala. 4; *Sylvester v. The State*, 71 Ala. 17.

The exception to the 2nd charge given at the instance of the solicitor must prove untenable. "Where the act is committed deliberately with a deadly weapon and is likely to be attended with dangerous consequences the malice requisite to murder will be presumed, for it is a presumption of fact that the natural or probable effect of any act deliberately done is intended by its actor."— 2 Whar. Cr. Law 7th Ed. Par. 944.

The third charge given for the State is proper under the authorities cited above.

While it may not have been necessary, it certainly was not error for the court at the request of the solicitor to charge that there was no conflict between the oral charge and the written charges given for the State.

Charge "A" was properly refused to the defendant under authority of *Smith v. The State*, 15 So. Rep. 843; *McNeil v. The State*, 15 So. Rep. 352.

Charge "B" asked by and refused to the defendant is invasive. The jury is to judge whether sufficient "cooling time" has elapsed or not, and yet this charge absolutely removes from their consideration this question by saying in substance that "if sufficient provocation had been offered defendant, he did not have sufficient cooling time and could not have been guilty of murder."

HARALSON, J.—There was no error in that part of the court's general charge and the 3rd charge given for the State, to which exceptions were reserved, as applicable to the facts of this case. One may be at fault in bringing on a difficulty, but if he withdraws from it in good faith and is departing, and the other party pursues him, and brings on the difficulty again by his own fault, he cannot invoke the doctrine of self-defense, but will be

[Stillwell v. The State.]

treated as an aggressor *ab initio.*—*Parker v. The State*, 88 Ala. 4; *Bostic v. The State*, 94 Ala. 47.

Charges 1 and 2 asked and given for the State assert very correct and familiar principles of law. No degree of provocation will extenuate a homicide, "if it be the result of a cool, deliberate judgment and previous malignity of heart." As has been well said, "The law carefully distinguishes between a sudden transport of passion, which springs instantaneously from what it allows as a sufficient provocation, and which prompts to an immediate act of violence, and a purpose of revenge, which usually follows such passion. In the first case, in condescension to the frailty of our nature, the law allows the provocation to extenuate a homicide committed at the instant, from murder to manslaughter. In the other, the provocation furnishing an incentive to revenge, so far from extenuating the crime, is a circumstance to be looked to as an evidence of malice." What constitutes a sufficiency of cooling time is one for the court, under the facts of the case, and not for the jury. *Felix v. The State*, 18 Ala. 724; *Keiser v. Smith*, 71 Ala. 482; *McNiel v. The State*, 15 So. Rep. 352; 2 Bish. Cr. Law, § 713.

The facts of this case show, that defendant struck deceased the blow that killed him, after deceased had assaulted him with a piece of plank. As soon as assaulted, defendant picked up an iron poker with which to return the blow, but he was arrested in that intention by a bystander, and made to put the weapon down. After this, deceased started away and got to the front door, when defendant picked up the poker and following, struck deceased over the head with it, causing his death. We must hold, that the use of the deadly weapon under these circumstances, was not simply the result of passion but also of revenge or malice. It was therefore unnecessary for the court in giving charge 1, to add, the qualifying words, "unless the evidence which proves the killing, rebuts the presumption of malice," as defendant's counsel insists ought to have been done.—*Hornsby v. The State*, 94 Ala. 66; *Hadley v. The State*, 55 Ala. 37.

What pertinency charge 4, given for the State, has, we are left without information to determine. It states that charges asked by defendant and given, are not in conflict with those given for the State, and yet, the

charges given for defendant, are not set out in the transcript.

Charges A and B requested by defendant were properly refused. The first is an argument, and both are misleading, as we have seen, in their application to the facts of this case.

Affirmed.


