# Suell *v.* Derricott, *et al.*

## *Damage for Death of Intestate.*

(Decided May 13, 1909.   49 South. 895.)

1. *Death; Action; Defenses.*—All the defenses that might have been interposed are available to a defendant in an action by an administrator for wrongful death under section 27, Code 1896, as would have been available had the action been brought by intestate himself had the act not caused his death.

2. *Same; Weight of Evidence.*—In civil actions brought by the administrator for death by wrongful act, the plaintiff need not prove his case beyond a reasonable doubt, but only to the reasonable satisfaction of the jury, the rule being the same as if the action had been brought by the intestate had he not died.

3. *Same; Burden of Proof.*—In an action under section 27, Code 1896, by an administrator for the wrongful death of his intestate the burden is on the plaintiff to show that the killing was wrongful and to establish his case by proper evidence as in other civil actions, after which the burden shifts to the defendant to show justification or excuse.

4. *Same; Evidence.*—Where the action was by the administrator for the wrongful death of his intestate and the defense was that decedent was shot while attempting to burglarize a store, it was permissible to show that there was in the store a burglar proof safe, and as to whether or not it contained any money, as shedding light upon the question whether decedent was attempting to commit burglary.

5. *Same.*—The evidence in this case examined and stated and held to sustain a verdict for defendant on their pleas of justification or excuse.

6. *Negligence; Wanton Negligence; Defense; Contributory Negligence.*—While contributory negligence may be pleaded as a defense to an action for injury from ordinary negligence it cannot be interposed as a defense to an action for injury caused by wantor or wilful negligence.

7. *Confounding Felonies.*—At common law, it was one's duty to prevent the commission of a felony by force if necessary, and a failure to do so, constituted a misdemeanor, called misprision of felony.

8. *Arrest; Without Warrant; Private Person.*—In certain cases, a private person may make an arrest without a warrant as well as an officer the arrest being tantamount to the issue of a warrant without oath or affirmation, and not an arrest without a warrant as prohibited by the constitution.

9. *Same; Force Used.*—Neither an officer nor a private person can use any more force than is necessary in making an arrest on similar charges.

[Suell v. Derricott, et al.]

10. *Same; Grounds of Belief.*—A private citizen will not be justified in making an arrest without a warrant under sections 6273, Code 1907, unless he has information of facts from a credible source which would require the issue of a warrant if submitted to a magistrate.

11. *Appeal and Error; Harmless Error.*—Where the verdict was properly rendered for the defendant, errors in instruction as to the amount of the verdict and the measure of damages are harmless.

12. *Same; Misleading Instructions.*—The giving of abstract or misleading instructions are not necessarily reversible error, and an error which did not injure will not require a reversal.

13. *Same; Finding; Conclusiveness.*—The finding on conflicting evidence will not be disturbed on appeal unless so palpably wrong as to shock the conscience of the court.

14. *Charge of Court; Directing Verdict.*—Where there was evidence which tended to support every material allegation as a plea, the court properly declined to direct a verdict for the plaintiff.

15. *Pleading; Demurrer; Grounds.*—Where a plea alleges a number of ultimate facts a demurrer thereto on the ground that the plea states a conclusion should specifically point out the allegation alleged to be conclusion.

16. *Obstructing Justice; Refusing to Assist Officer.*—A refusal to assist an officer to make an arrest when required to do so by the officer, is a misdemeanor.   (Sec. 6271, Code 1907.)

17. *Homicide; Justifiable Homicide; Arrest by Private Citizen.*—When a private citizen is authorized by statute to make an arrest, he is clothed with the same rights and powers as an officer, and can urge the same defense as justification of a homicide committed in making the arrest.

18. *Same; Defense of Habitation.*—One's house or place of business is his castle for the purpose of defense and one may defend his place of business in the same manner as his dwelling; but neither may be used for offense.

19. *Same; Self Defense; Apparent Danger.*—If it reasonably appears to accused to be necessary for his own defense to commit a homicide, he is excusable though he was misled without his own fault as to the necessity for such extreme measures, and the danger apprehended did not exist.

20. *Same; Defense of Another.*—One may do for another whatever he may do in defense of his own person or property; so that a guest may defend his host's house or one may defend his neighbor's house.

21. *Same; Preservation of Peace.*—It is generally murder to kill one fleeing from arrest for the commission of the breach of tne peace or a misdemeanor, although such one cannot be otherwise taken; however, the killing may be manslaughter if done unintentionally.

22. *Same; Felony; Preventing Escape.*—After arrest, or before actual arrest where there is no other way to take him, the killing of a felon is justifiable; but if he can be taken without the killing, his killing is at least manslaughter.

[Suell v. Derricott, et al.]

23. *Same; Justifiable Homicide; Prevention of Crime.*—A killing committed to prevent violence or atrocious crimes, such as robbery, murder, burglary, arson, etc.. is justifiable by the law of nature as well as by the common law.

APPEAL from Bibb Circuit Court.

Heard before Hon. B. M. MILLER.

Action by E. D. Suell as administrator against Fred Derricott and others for causing the death of his intestate. Judgment for defendants and plaintiff appeals. Affirmed.

LOGAN, VAN DEGRAAFF & FULLER, for appellant. The court erred in overruling the demurrers to the 9th special plea.—*Oliver v. The State,* 17 Ala. 587; *Dill v. The State,* 25 Ala. 15; *Morton v. Bradley,* 30 Ala. 683; *Williams v. The State,* 44 Ala. 41; *Clements v. The State,* 50 Ala. 117; 2 A. & E. Ency of Law, 848. The court should have sustained demurrers to the 10th plea.—3 Cyc. 891, et seq., 2 A. & E Ency of Law, 885. Demurrers should have been sustained to the 12th plea.—*Ray v. The State,* 66 Ala. 281; 3 Cyc. 892; *Hackett v. Commonweath,* 15 Pa. St. 95; *Jackson v. The State,* 77 Ala. 18. Charges 1 and 3 should have been given.—*Story v. The State,* 71 Ala. 328. Charge 2 should have been given.—*Donahue v. The State,* 36 Ala. 281.

JOHN T. ELLISON, DANIEL COLLIER, and PERCY & BENNERS, for appellee. (Briefs were borrowed by counsel and have not been returned, Reporter.)

MAYFIELD, J.—This action is by the appellant, as administrator, against the defendants. (appellees). brought under section 27 of the Code of 1896, known as the "Homicide Act," to recover damages for the wrongful death of his son, who is alleged to have been killed by the defendants by unlawfully and intentionally shooting him with a gun or a pistol.

[Suell v. Derricott, et al.]

While this court has passed upon a great number of appeals in cases brought under this statute, this is one of the few in which the court is called upon to review a case in which the wrongful death complained of was the result of the intentional killing with a deadly weapon, and which, if without justification, would be murder. While we are not wholly without precedent in this, or other states and jurisdictions, the cases are far less numerous than those in which the death was the result of negligence, simple, gross, or wanton. This court has construed this statute to be punitive in its nature and purpose, and not compensatory, and to provide that the damages recoverable be distributed under the laws of distribution as other personal property of the deceased, and that they are not liable to the payment of debts of the deceased. Statutes like ours were clearly intended to correct what was deemed a defect of the common law, that the right of action based on a tort or injury to the person died with the person. Our statute, as it now exists, was evidently in a large degree modeled after the English act of Parliament known as "Lord Campbell's Act," passed in the year 1846. It must be observed that the right of action is only given under this statute to the personal representative when the intestate could have maintained an action for the same act had it failed to produce death. A corollary of this is that, if the wrongful act complained of had not produced death, but only an injury, and the person injured could not have maintained an action, then the personal representative cannot maintain an action under the statute when death results. It would therefore seem to follow that all defenses available to the defendant, if the action had been brought by the person injured when death did not result, are available to the defendant in an action brought by the administrator of the person in-

jured for the wrongful death; that the burden of proof, and the weight and sufficiency of the evidence, would be the same in both cases.

It is too well settled in this state to need citation of authority that contributory negligence on the part of the plaintiff is available as a defense where the injury is the result of simple negligence, and that it is not available as a defense when the injury is the result of wanton negligence or willful injury. A case decided by this court, something like the one in question is that of *King v. Henkie*, 80 Ala. 505, 60 Am. Rep. 119, in which the court, through Somerville, J., decided that the action could not be maintained under the statute against a saloon keeper who sells or gives intoxicating liquors to a man of known intemperate habits who is helplessly drunk at the time though the drinking of the intoxicant caused his death almost immediately. The reason assigned by the court was that, if death had not resulted, the person drinking could not have maintained an action for the wrongful act on the part of the defendant complained of, and that death and the injury was the result of drinking the intoxicant, and not the result of the sale or delivery to the person intoxicated. In fact the court in that case held that the plaintiff's intestate was guilty of contributory negligence which resulted in the injury. In this the court was probably in error (though it is not necessary to be decided, and we do not decide the point). The wrongful act there complained of was a willful and intentional one, and the contributory negligence, if it existed, would have been no defense. We only cite or refer to this case on the proposition that the action can only be maintained by the administrator when the action could have been maintained by his intestate if death had not resulted. We have been unable to find any case, in this or any other

court, in which the facts constituting the killing were similar to the facts in this case. While some of the defenses interposed in this case have been interposed in others, we have found no case in which all the defenses of this were so interposed.

For a clear understanding of the legal questions involved in this appeal, it may be well to state the substance of the evidence. While the evidence is not wholly undisputed, and different inferences therefrom might be drawn, the substance of the evidence showed, almost without conflict, that, on the night of the killing, the intestate and one Ed Riley had either broken into, or were attempting to break into, a storehouse, at Hargrove Ala., containing goods, wares, merchandise, etc., which store belonged to the Cahaba Southern Mining Company, a corporation. The defendant Derricott was superintendent of the company, and had charge of the building referred to. The other defendant, Franklin, was the agent of the Southern Railway Company at the same place. Hargrove was a mining camp. The store referred to was a commissary. On the night of intestate's death, the defendant Franklin was awakened by his wife, about 12 or 1 o'clock, and told by her that she heard a noise like some one breaking into the store. Franklin got up, procured a pistol, went around to the commissary and saw two men, as he said, trying to break into the store. He fired his pistol twice into the air to frighten them away, but they did not leave. He then went to Derricott's house and told him of the circumstances. Derricott dressed and went with him to the store, as some of the evidence tended to show, with the intention of capturing or arresting the men. They carried a lantern, and turning the corner, in sight of the store, they saw a man standing near the wall of the store, with an object in his hand, said by the witnesses

to look like a gun as best they could see. They also heard sounds, as they approached the store, like the ripping off of planks. As they so turned the corner of the store and saw the man, they called to him to stop. The man turned, bringing the object in his hand (said by them to resemble a gun) to point in the direction of the defendants, whereupon both of them fired, and the man fell dead. The deceased, on examination, proved to be plaintiff's intestate. It was soon perceived that another man was under the store, who, on being called to and assured that no harm would be done him, came out, proving to be Ed Riley. Riley was examined on the trial in behalf of the plaintiff. The substance of Riley's testimony was that he and the deceased had been drinking heavily, that they went to the store with an iron bar, and that deceased was breaking into the store, or had been attempting to break into it, with the iron bar; that when Franklin fired the first two shots they ran under the store, and that Suell only came out immediately before he was shot. It appeared that planks had been pulled off the store, and that through the cellar door a hole had been broken, as large as a man's head, and (inferentially, at least) that this was done with the iron bar Suell had in his hand at the time he was shot—the object which, as they say, defendants thought to be a gun. Neither of the defendants recognized Riley or deceased before the shooting or before the killing.

The complaint contained several counts charging, in different words, the unlawful and intentional killing of plaintiff's intestate, by shooting him with a gun or pistol. Demurrers to the complaint were interposed, but were finally withdrawn, and no question is raised as to the sufficiency of the complaint. To the complaint, the defendants filed the plea of the general issue, and a great number of special pleas of justification. Demurrers

were sustained to all the pleas except 9, 10, 12, and 15, and were overruled as to these; consequently, these are the only pleas necessary to be considered on this appeal. Plea No. 9 in effect alleged that, at the time of the killing defendants were in the act of arresting intestate for the commission of a felony, and that they used no more force than was necessary. Plea No. 10 is substantially the same, except in alleging that they had reasonable cause to believe that intestate had committed a felony, instead of that he had actually committed it. Plea No. 12 alleged that the killing was necessary in order to arrest intestate and in order to prevent great bodily harm being done to defendants, and that at the time they killed intestate he was attempting to commit burglary in the presence of the defendants; while plea No. 15 set out the facts fully, averring that at the time they shot intestate they honestly believed that the iron bar which he had in his hand was a gun or rifle, that the motion he made towards them was a hostile one, that it was necessary to shoot, and that they did so to protect themselves, under the honest or reasonable apprehension of great bodily harm at the hands of intestate. So the defense relied upon, and the issues upon which the cause was tried, were, in short, self-defense, and second, that the killing was necessary to arrest a felon and to prevent the commission of a felony.

The trial resulted in a verdict and judgment for defendants, from which the plaintiff appeals, here assigning as error the rulings of the court, overruling his demurrers to the 9th, 10th, 12th, and 15th pleas, several rulings upon the evidence which were adverse to plaintiff, the giving of certain charges requested in writing by the defendants, and the refusal of the court to give certain charges in writing by the plaintiff. We have been greatly

[Suell v. Derricott, et al.]

aided, in our examination of the new and important questions involved on this appeal, by the full and able briefs filed by the learned counsel on the respective sides.

It has been held by high authority that the law of self-defense in civil actions brought for wrongful 'death' is the same as in criminal prosecutions for homicide, except that the burden does not rest upon the plaintiff of proving the cause beyond a reasonable doubt, and that the plea of self-defense does not cause the burden to shift, though as to this last proposition we do not decide, because not necessary.—See Tiffany's Death by Wrongful Act, § 64; *Cobb v. Owen,* 150 Ala. 410, 43 South. 826. In this case, as in all similar ones under this statute, the burden is on the plaintiff to establish his case, and, as a part of it, to show that the killing was wrongful. If plaintiff's own evidence should show that, although his intestate was killed, the act complained of was done in justifiable exercise of the right of self-defense, or that it was justifiable or necessary for any other reason, then of course he would not have proven his case. We also think the true rule to be, that in cases like the one at bar, where the death is caused by intentional shooting, the case should be tried in the same manner and governed by the same principles of law as if the intestate had not died of his injuries, and as if he were suing to recover damages for the wrongful act. We think the better rule to be that the burden of proof, in cases like this, is on the plaintiff, as in other civil cases, to first establish his case by proper and sufficient proof, and that, having done this, the burden of proof is then on the defendant to show justification or excuse, which he sets up in his special pleas.—*March v. Walker,* 48 Tex. 377; *Brooks v. Haslam,* 65 Cal. 421, 4 Pac. 399; *Darling v. Williams,* 35 Ohio St. 58; *Tucker v. Johnson,* 89 Md. 471, 43 Atl. 778, 44 Atl. 1004, 46 L. R. A. 181.

The first question of importance for us to determine is whether or not the special pleas to which demurrers were overruled presented a good defense. Homicides committed for the prevention of any forcible or atrocious crimes are justifiable by the law of nature, and also by the law of England, as it stood so early as the time of Brackton, and as it was declared by statute (24 Hen. VIII, c. 5; 4 Blackstone's Commentaries, 213). If any person attempts robbery, or murder of another, or attempts to break open a house in the nighttime (which extends also to an attempt to burn it), and is killed in such attempt, the slayer shall be acquitted and discharged.—Blackstone, supra; 3 Greenleaf on Evidence, § 115.

These same questions have been frequently decided in this court relative to criminal trials of homicide. It was said by Chief Justice Dargan (in *Oliver's Case,* 17 Ala. 587), that "the law will justify the taking of life when it is done from necessity to prevent the commission of a felony." A similar rule was declared, also, in the cases of *Dill v. State,* 25 Ala. 15, *Noles v. State,* 26 Ala. 31, 62 Am. Dec. 711, *Simpson v. State,* 59 Ala. 1, 31 Am. Rep. 1, and *Storey v. State,* 71 Ala. 329; and these same propositions and the same authorities were reaffirmed and quoted by Chief Justice Stone in the case of *Bostic v. State,* 94 Ala. 45, 10 South. 602, from which we have nearly literally quoted.

Somerville, J., in *Storey's Case,* 71 Ala. 336, in speaking of the rule that the defendant must decline or offer to decline the combat by retreat, if he can do so with safety, before he is justified in setting up self-defense, says: "Where, however, the assault is manifestly felonious in its purpose and forcible in its nature, as in murder, rape, robbery, burglary, and the like, as distinguished from secret felonies like mere larceny from the person or the picking of one's pocket, the party attacked

is under no obligation to retreat. But he may, if necessary, stand his ground and kill his adversary." This is taken literally from 2d Bishop on Criminal Law, § 553. Mr. Bishop says that the general doctrine is that, however complete the right of self-defense may be, yet it is founded on necessity, and cannot extend beyond that foundation; in other words, it cannot be exercised in any case or any degree which is not necessary. He also says that no man may lawfully deprive another of life merely because he prefers his own life to the other's. And, again, that no exact rule can be laid down to determine under what circumstances a man may stand upon his own rights, to the destruction of the life of him who comes to take them away. Where only an assault is intended, the right of perfect defense to the extent of taking life does not exist, yet he may repel force by force and give blow for blow, but where the attack is made with murderous intent, the person attacked is under no obligation to flee; he may stand his ground and, if need be, kill his adversary. This has been many times decided by this court.

Mr. East has said that a man may repel force by force in defense of his person, habitation, or property, against one who manifestly intends or endeavors, by violence or surprise, to commit a known felony, such as murder, rape, robbery, arson, burglary, and the like, upon either. In this case he is not obliged to retreat, but may pursue his adversary until he has secured himself against all danger; and if he kill him in so doing, it is called justifiable self-defense.

Mr. Bishop states the doctrine of self-defense as follows: "If the person assaulted, being himself without fault, reasonably apprehends death or great bodily harm to himself unless he kill the assailant, the killing is justifiable." In the rule of self-defense of one's per-

son or of his property, there are exceptions to the general proposition, the same as in every department of knowledge, but these exceptions are intended to reach the same result that is aimed at by the rule, rather than to depart from the rule; consequently the exception should keep us within the meaning of the rule, rather than lead us from the rule.

As to the right to kill in making arrests or to prevent an escape, the rule may be stated as follows: "Generally when one refuses to submit to arrest after he has been touched by the officer, or endeavors to break away after the arrest is effected, he may be lawfully killed, provided this extreme measure is necessary. In cases of felony the killing is justifiable before an actual arrest is made, where in no other way the escaping felon can be taken. In cases of felony, if the felon flee from justice, it is the duty of every man to use his best endeavor to prevent an escape, and if in the pursuit the felon be killed, where he cannot be otherwise overtaken, the homicide is justifiable, but if he may be taken in any case without such severity, it is at least manslaughter in him who kills him, and the jury ought to inquire whether it was done of necessity or not." Justification, however, happening in cases of persons charged with misdemeanors or breaches of the peace, is subject to a different rule from that as to felony. Generally speaking, in misdemeanors, it will be murder to kill the party accused, when fleeing from arrest, though he cannot otherwise be taken; but under some circumstances it might be manslaughter, if it appeared that death was not intended.

There is another rule of law, well settled, applicable to homicides, and that is, that whatever one may do for himself he may do for another. That is to say, a guest in the house may defend the house, or the occupant may

[Suell v. Derricott, et al.]

assemble his neighbors for its defense.   There is also a
rule of law that, in cases of self-defense, the party is not
required to know the real fact, but he may act upon a
reasonable and well-founded appearance and apprehen-
sion, and, whenever a man exercises the right of self-
defense, he is understood to act on the facts as they rea-
sonably appeared to him, or as they would appear to a
reasonable man, similarly situated; and if, without fault
or carelessness on his part, he is misled concerning the
facts, and defends himself according to what he reason-
ably supposes the facts to be, he is justifiable, though in
truth the facts as they were reasonably supposed did
not exist, and in fact he had no occasion for the extreme
measure.   Mr. Wharton has stated the law applicable
to this case as follows:  "A man may repel force by force
in the defense of his person, habitation, or property
against one or many who manifestly intend or endeavor,
by violence or surprise, to commit a known felony on
either.   In such cases he is not obliged to retreat, but
may pursue his adversary until he finds himself out of
danger, and if, in the conflict between them, he happen-
eth to kill, such killing is justifiable."   "The right of
self-defense in such cases," says the author, "is founded
on the law of nature, and is not one that can be super-
seded by any law of society, and where a known felony
is attempted on a person, be it to rob or murder, the
party assaulted may repel force by force, or even his ser-
vant attendant upon him or any other person present
may interpose for the purpose of preventing the mischief
and, if death ensue, the party so interposing will be jus-
tified."   The author cites a number of cases—one, where
the landlord was awakened by his servant and told that
she heard thieves breaking open the door, and the land-
lord, rising suddenly and running down the stairs with
a drawn sword, came upon the deceased (another ser-

vant), who had secreted herself in the buttery, but was now observed by the wife of the landlord, who cried out, "Here they be that would undo us," and the landlord thereupon thrust his sword into the servant and killed her; and it was held to be misadventure. Another case he cites was where an English nobleman, being weary of life and willing to be rid of it by the hand of another, having first blamed his keeper or tenant for suffering his deer to be destroyed, commanded him to execute the law; then went into his own park at night as if with intent to steal the deer, and being questioned by the keeper, who knew him not, the nobleman refused to stand or answer, and was shot by the keeper; this, says Lord Hale, "was holden excusable homicide."

It will be observed that a distinction is made between felonies and misdemeanors, as to the amount of force that may be used to prevent the one or the other, or that may be employed to arrest persons, or to prevent the escape of persons who have committed the one or the other. It is not only the right of all persons to prevent felonies in certain cases, but at common law it was made the duty, and was made a misdemeanor known as misprison, for any person seeing a felony attempted, not to prevent it by force if necessary, and one who failed to discharge such duty was guilty of the misdemeanor called misprison of felony.—*Carpenter v. State*, 62 Ark. 286, 36 S. W. 906.

Mr. Bishop says that the doctrine of misprision may be stated as follows: "A man cannot be liable for a crime which another commits, unless his own will in some degree concurs in and contributes to it; but when such crime is a treason or felony, and he stands by while it is done, without using the means in his power to prevent it, though his will does not concur in it, or when he knows of such crime, though in his absence it is com-

mitted, and makes no disclosure of it to the authorities nor does anything to bring the offender to justice, the law holds him guilty of a breach of that duty which every man owes to the community wherein he dwells and the government which protects him."

Lord Coke said: "If any be present when a man is slain and omit to apprehend the slayer, it is a misprision. Misprision of a felony is a criminal neglect either to prevent the felony being committed by another, or to bring to justice the person known to be guilty of the felony."—Bishop on Criminal Law, vol. 1, § 507.

A man's house is his castle for purposes of defense only, and, as has been said by this court, it cannot be turned into an arsenal of offense. While one's house formerly meant his home, his dwelling, the rule has also been extended to one's place of business or his place of refuge, consequently a man's place of business must be regarded pro hac vice his dwelling. He has the same right to defend it against intrusion, and he is under no more necessity of retreating from the one than from the other; his duty to defend one is the same as the other.— *Jones v. State,* 76 Ala. 8; *Cary v. State,* 76 Ala. 78; *Lee v. State,* 92 Ala. 15, 9 South. 407, 25 Am. St. Rep. 17.

By statute in this state a private person is authorized to arrest for any public offense committed in his presence, or where the felony has been committed, though not in his presence, by the person arrested, or where a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; and he may make the arrest for a felony on any day and at any time.—Code 1907, § 6273; *Cary v. State,* 76 Ala. 78.

An arrest may be made under our law without a warrant by an officer, or by a private person in certain specified cases. It is the issue of the warrant, without oath or affirmation, that is forbidden by the Constitution,

and not the arrest without a warrant.—*Williams v. State,* 44 Ala. 41.

Under our statutes it is made the duty of every private citizen, when required by an officer, to assist him in making an arrest, and a refusal so to do is a misdemeanor.—Code 1907, § 6271; *Dougherty's Case,* 106 Ala. 60, 3 South. 441.

The rights and powers of a private citizen in making an arrest for an offense, and on the times and occasions provided for by the statute, are the same as those of an officer, and consequently in making arrests in the cases, and on the times and occasions so provided by statute, he is entitled to the same justification and defense as the officer. It is the settled law of this state that life may be taken if necessary to pevent the commission of a felony or if necessary to arrest a felon after it has been committed.—*Clements v. State,* 50 Ala. 117.; *Williams v. State,* 44 Ala. 41.

But an officer is not justified in taking the life of one charged only with a misdemeanor.—*Handley v. State,* 96 Ala. 50; 11 South. 322, 38 Am. St. Rep. 81. Neither an officer nor a private citizen is ever authorized to use any more force than is necessary to effect the arrest.

As a general rule, at common law an arrest could not be made without a warrant, but if the felony or breach of the peace threatened or committed within the view of an officer authorized an arrest, it was his duty to arrest without warrant, or if a felony had been committed, and there was probable cause to believe that the particular person was the offender, he could be arrested without a warrant; but the matter of arrest is now in this state largely the subject of statutory regulation, which in some degree is an affirmation of the rules at common law. Of course an officer or a private citizen under the statute cannot justify an arrest upon the ground that

he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts derived from credible sources, or from persons reasonably presumed to know them, which, if submitted to the judge or the magistrate having jurisdiction, would require the issue of a warrant of arrest.—*Cunningham v. Baker*, 104 Ala. 171, 16 South. 68, 53 Am. St. Rep. 27.

Applying these principles of law above announced to the special pleas 9, 10, 12, and 15, to which demurrers were overruled, we cannot say that the trial court committed reversible error in overruling the plaintiff's demurrers thereto. We do not mean to say that they were invulnerable or unassailable, but none of them were subject to the particular grounds of demurrers assigned, or, if so subject, such ground of demurrer was not sufficiently certain or specific to point out the defect. This is particularly true as to plea No. 12, the ground of demurrer being that "the said plea fails to aver facts, but sets up merely the conclusion of the pleader." This is not wholly true as to this plea; it does aver a number of different facts, and probably contains some conclusions too, but if so, they are not sufficiently pointed out by the demurrer to put the court in error for overruling it.

There was no error in overruling plaintiff's objection to the question: "Was there a burglar-proof and fire-proof safe in said storehouse, and if so, did it contain money?" Whether or not the intestate and the other party had committed burglary, or were in the act of committing burglary at the time of the killing, was a material question, and the contents of the house which they were alleged to have burglarized, or were attempting to burglarize, was a proper subject for the consideration of the jury.

As to the refusal of the requested charges, the recitals of the bill of exceptions are as follows: "Here the plaintiff requested the court to give the following charges in writing, and the court refused to give each one of said charges, and marked across the face of each one, 'Refused. B. M. Miller, Judge.'" This language is slightly different but not materially different from the recital in the case of *So. Ry. Co. v. Douglas,* 144 Ala. 351, 39 South. 268, or that in the case of *Verberg v. State,* 137 Ala. 73, 34 South. 848, 97 Am. St. Rep. 17, and under the authority of those cases, and others which might be mentioned, it would probably be construed as a request to give the charges in their entirety, and consequently all might be refused if any one was bad. But the writer of this opinion has never thought that the presumption should be indulged from such recitals that the request was to give all the charges together as an entirety, and not to give or refuse each separately. The writer thinks that it is a matter of common knowledge, which this court and each member thereof practically as well as judicially knows, that the charges were requested and were given or refused separately. In fact, he thinks it is a wellknown practice that they are requested, given, or refused separately, when they are separately numbered, though they may be all written upon the same sheet of paper. But it is not necessary to again decide that question in this case, because the recital not being exactly the same as the others, and owing to the opinion of the writer as stated above, he has examined separately each charge refused to the plaintiff, and thinks and holds that each of said charges was properly refused. The first was practically the affirmative charge as to plea No. 9, and it was held that this plea was sufficient, and there was clearly and certainly evidence which tended to support every material averment, and

consequently such charge should not be given. There was certainly evidence tending to show that a felony had been committed by the intestate; consequently for that reason the second charge was properly refused. There was also evidence tending to show that a burglary had been committed; consequently the court should not charge as a matter of law that no burglary had been committed. The third charge was properly refused, because there was evidence tending to support every fact which the charge requested the court to charge had not been proven. A great number of these charges were in effect the affirmative charge as to respective issues raised by the pleas, and, as there was evidence tending to support each one of them, the court could not direct a verdict as to such issues. As the verdict was for the defendants, it is unnecessary to pass upon the charges relating to the amount of verdict or measure of damages.

We have examined each of the charges given at the request of the defendants, and we find no error in any one. We deem it unnecessary to discuss each of these charges separately. It is true that some few of the charges may be abstract, and some misleading, but the giving of abstract or misleading charges is not necessarily reversible error. A great number of the charges given at the request of the plaintiff are set out, as well as those given at the request of the defendants, and after a careful examination of every exception and objection by the plaintiff, and of every assignment of error, we are unable to find any error, and certainly none to the injury of the plaintiff, for which the judgment in this case can be reversed.

It appears from the pleadings and evidence in this case that the plaintiff and defendants had a fair trial and that the questions of fact involved in the case were fairly and fully submitted to the jury under proper in-

structions by the trial court, which resulted in a verdict for the defendants, and we are unable to say that it was not in accordance with the law and the evidence in the case. The weight and sufficiency of the evidence and the inferences to be drawn from it were questions exclusively for the jury, and they have decided them against the plaintiff, and we are not prepared to say that the verdict was unwarranted. We are not prepared to say that any reasonable man would not have done what the defendants did on this occasion under the evidence and circumstances shown by this record, though these were exclusively questions for the jury, and, unless the findings are so palpably wrong as to shock the conscience of the court, the verdict should not be disturbed by the trial court or the appellate court.

Finding no error in the record, the case must be affirmed.

DOWDELL, C. J., and SIMPSON and DENSON, JJ., concur.