2 So.2d 784

**DYSON v. STATE.**

8 Div. 968.

Court of Appeals of Alabama.
March 25, 1941.

Rehearing Denied April 8, 1941.

R. B. Patton, of Athens, for appellant.

Thomas S. Lawson, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

This is the second appeal in this case. The facts, as developed in the evidence on the two trials, were substantially the same in both; and they are sufficiently stated in the opinion by this court on the first appeal, to which reference is here made. Dyson v. State, 28 Ala.App. 549, 189 So. 784.

On the second trial, that giving rise to the instant appeal, the State—after introducing testimony tending to show that deceased, Howard Gladden, was grievously wounded by appellant, an officer of the law engaged at the time in the performance of his duties—was permitted, over appellant's objection, to show that deceased was incarcerated in the city jail and allowed to, and did, remain there from late Saturday afternoon until sometime "up in the morning" the following Sunday.

True, some of the circumstances that lead us to conclude that the allowance of this testimony was highly prejudicial to appellant were allowed to be detailed in evidence without exception. But that does not change our view that the exception that was reserved—that is, to the length of time deceased was left in the jail before, we add, being taken to a hospital where he died—is of sufficient merit to require a reversal of the judgment of conviction. We will endeavor to illustrate.

Deceased, it was admitted, was struck by appellant, how severely, and whether or not justifiably being matters for the jury's decision. He was placed under arrest by appellant and taken to jail. There, so far as appears, appellant's responsibility and control over the prisoner ceased. For, after the prisoner's arrest and imprisonment in the city jail, appellant's jurisdiction and authority over him then terminated. It is indicated from the evidence that appellant was a beat policeman (the North Athens district). As such officer, his sole duty in this case was to accomplish the arrest and incarceration of deceased; and, when this duty had been ex-

ecuted, custody and control of the prisoner were then and there transferred to others.

In our view, it was highly improper for the State to introduce testimony by another prisoner in the jail that deceased, whom the witness observed in an unconscious condition some hours after the said incarceration, "was grunting and taking on, but not saying anything, and this condition continued through the night." But appellant made no objection to the introduction of said testimony.

This is mentioned to show, as we conclude, the poisonous nature of the immediately following testimony that deceased was allowed to remain in the jail, in this condition, from late Saturday afternoon until his removal to the hospital "up in the morning" of the following Sunday.

The astute solicitor, representing the State, inquired of the fellow-prisoner witness: "What time did *they* take him out of jail?" (Our emphasis.) But he quickly explained to the court, *and the jury,* that by "they", he meant the "authorities". And by the "authorities", it is plain that the jury could have only understood him to mean the "city authorities", *including appellant.*

So it is at once apparent that the clear purport of the testimony under consideration could have been, and been only, that *appellant,* as one of the city authorities, brutally abandoned the stricken decedent, "grunting and taking on" and "unconscious", "through the night", leaving him thus in jail, before taking him to the hospital the following day. To our minds, the testimony was not admissible, as the learned trial court remarked, "as a part of the general history of the man's condition from the time it is alleged he was struck until he died"; but that it carried with it, in connection with the other testimony already in the case without objection—improper though it was—the clear imputation that appellant (found by the jury to have struck the deceased unjustifiably so that he died) was an unfeeling, callous brute and irresponsible of his duty as an officer in thus leaving deceased in the jail for so many hours without removing him sooner (appellant never removed him) to the hospital.

This, we think, was unfair to appellant, who is not shown to have had any authority to remove deceased from the jail, or to take any other action regarding or concerning him, after the execution of his official duty in arresting him and placing him in confinement with the proper authorities.

The damaging and prejudicial effect upon the jury of this character of testimony, as well as the improper use to which it may be employed by skillful and diligent prosecuting attorneys in their appeals for conviction, is most evident. The picture is clear. Elaboration would be unnecessary. Such evidence was improper.

We think due exception to the admission of the said testimony is sufficiently shown, when we consider the "running colloquy" between the solicitor, the appellant's (defendant's) counsel and the court—this, especially, because of the sweeping statements of the court followed at the end by an "exception" duly reserved by appellant's counsel.

We do not accord with the insistence that a reversal should be ordered for the refusal by the trial court to give certain of the special written charges requested by appellant. These charges were properly refused either because they were incorrect statements of the law or substantially and fairly covered by others, requested and given, along with the lucid and scholarly general oral charge of the court. We will only deal with a few of the refused charges upon which unusual stress is laid for a reversal.

Charge BB is clearly argumentative. Furthermore, the force to be applied by an officer of the law seeking to make an arrest must be only such as is reasonably necessary to accomplish it (and protect himself), irrespective of the personal belief of the officer in regard thereto. Suell v. Derricott et al., 161 Ala. 259, 274, 49 So. 895, 23 L.R.A.,N.S., 996, 18 Ann. Cas. 636; Tarwater v. State, 16 Ala.App. 140, 75 So. 816.

Charges V and VV have been frequently condemned as argumentative. They are denounced as "even though" charges. Their refusal was without error. Louisville & N. R. Co. v. Parker, 223 Ala. 626, 646, 138 So. 231; Western Union Tel. Co. v. Gorman, 240 Ala. 482, 199 So. 702.

Charge Ż was refused without error because no issue was presented by the evidence as to who was the aggressor. An officer attempting to make a lawful arrest is justified in using such force as is reasonably necessary for the accomplishment of his purpose. He is not required to re-

124

treat before an assailing prisoner. He must press forward and do his duty. He must be the "aggressor." The charge was therefore abstract as applied to the evidence adduced, and its tendency was to mislead. 4 Am.Jur. p. 54, Sec. 77; 6 C.J.S., Arrest, p. 612, § 13, a, c; Dyson v. State, supra, and cases cited; Ala.Dig., Arrest, ☜ 63(3), Homicide ☜ 105.

This court, sitting en banc, has read and carefully studied the entire record in this case. We think the ends of justice require a reversal of the judgment below for the prejudicial error to appellant, noted above.

Reversed and remanded.