# Watkins *v.* The State.

*Indictment for Murder.*

1. *Order for special venire, and setting day for trial.*—An order setting a day for the trial of a capital case, and ordering a special *venire,* and service of a copy thereof on the defendant (Crim. Code, p. 134, § 10, note), should show on its face whether it was made before or during the week of the trial, since the regular juries for the week of the trial are a part of the special *venire;* but the failure of the order to show this fact

[Watkins v. The State.]

is not an available error, when it can be ascertained with certainty from other parts of the record that the proper *venire* was summoned.

2. *Mistakes or mis-spelling in indictment.*—The court determines, on inspection of the original indictment in this case, that the defendant's name is there spelled *Watkins,* and not *Wathims,* and that the homicide is charged to have been committed, not with malice *oforethought,* but with malice *aforethought.*

3. *To what witness may testify.*—The deceased having been shot while on his mule, and the distance between him and the defendant at the time being a material question, a witness who saw his body lying on the ground, before its removal, may testify that he saw in the sand, a few steps from the body, a mashed place "which looked like where a man's shoulder had struck the ground."

4. *Overcoat worn by deceased; relevancy as evidence tending to show his position or attitude.*—As tending to show the position or attitude of the deceased when the fatal shot was fired at him, it is competent for the prosecution to put in evidence the overcoat worn by him at the time, showing the holes made by the several bullets which struck him.

5. *Self-defense; retreat from one's house or yard.*—A man's house is his castle for purposes of defense, and he is not required to retreat from it when assailed; but he can not use it as an arsenal for offensive purposes, nor claim its protection while sallying out to attack; and where the defendant, being assailed in his front yard by the deceased, who rode up on horseback, pointed a pistol at him, and threatened to shoot him, thereupon went into his house, returned with his gun in his hand, and shot the deceased, he can not claim to have acted in self-defense.

6. *Argumentative charges* are properly refused.


FROM the Circuit Court of Lawrence.

Tried before the Hon. HENRY C. SPEAKE.

The defendant in this case was indicted for the murder of James York, by shooting him with a gun; was convicted of murder in the first degree, and sentenced to the penitentiary for life. The defendant's name, as the indictment is copied in the transcript, was spelled *Forrest Watkins;* and this court decides, on inspection of the original indictment, that it was so written there. The defendant pleaded in abatement, demurred to the indictment, and objected to going to trial, on account of alleged defects in the indictment, which this court holds were without foundation in fact; and exceptions were reserved to the overruling of these several motions and objections.

The indictment was returned into court on the 29th April, 1890, which was Tuesday; and the trial was had on the day set for it, which was Wednesday, May 7th, 1890. The minute-entry showing the arraignment of the defendant, the order setting a day for the trial, &c., is without date. After reciting the arraignment, the order setting a day for the trial, &c., it proceeds thus: "And the defendant being in open court, the court caused the box containing the names of the jurors of the county to be brought into the court-

room, and, after having the same well shaken, the presiding judge then and there, publicly, in the presence of the defendant, drew from said box the names of fifty jurors, namely," setting them out, "a list of which was immediately made out by the clerk of the court, and the sheriff ordered to summon said jurors to appear on said 7th day of May, 1890, the day set for the trial of this cause. It is ordered by the court, also, that said fifty persons so drawn and ordered summoned, together with the panel of petit jurors organized for the present week of this court, shall constitute the *venire* from which the jury to try this case shall be selected; and it appearing that the defendant is in actual confinement," it was further ordered that the sheriff serve on him, one entire day before said 7th May, 1890, "a copy of the special jury drawn and ordered summoned to try said cause, together with a copy of the jurors organized for the present week of this court, with a copy of the indictment," &c. The record does not set out a copy of the special *venire*, nor show the sheriff's return; nor does it show the copy served on the defendant. On the trial, as the judgment-entry recites, and also the bill of exceptions, the defendant moved to quash the *venire*, "because a list of the jury served upon him was not a copy of the original *venire* of petit jurors organized for this week; and for the further reason, that the court directed the sheriff to serve on the defendant a list of the jurors drawn and ordered summoned, together with the *venire* of the petit jurors organized for this week, instead of directing him to serve a list of the jurors drawn and summoned; which motion the court overruled, and defendant excepted."

The evidence adduced on the trial, as appears from the bill of exceptions, showed that the homicide occurred on Sunday evening, February 9th, 1890; that the deceased had been showing attentions to a sister of the defendant, against the objection of her father, who told him that he must not come to the house again; that the deceased afterwards declared to several persons that he "intended to have the girl if he could get her," and made threats against her father and brother, which threats were communicated to the defendant; and that on said Sunday evening he rode up to the front gate of the house, while the defendant was out in the front yard, and his several sisters were on the front porch. Some of the witnesses testified, that when the deceased rode up to the gate, or near it, he presented his pistol at the defendant, cursing him, and threatening to shoot him; while others

[Watkins v. The State.]

testified that he kept his right hand in his pocket, while cursing and threatening him. The defendant went into the house, came out again around the corner,. with his shot-gun in his hand, ordered the deceased to move on, or go away, and shot him as he moved slowly away, keeping his mule "squared to the road," as the witnesses expressed it, and his right hand in his pocket. Several buck-shot entered the left side and back of the deceased, and the surgeon who examined and probed the wounds testified that he could not have been fronting his assailant. Several exceptions were reserved to rulings on evidence, which will be understood from the opinion.

The court gave the following charge to the jury, on request of the solicitor: "If the jury believe from the evidence, beyond a reasonable doubt, that James York rode up to the defendant's gate, and pulled out his pistol, and pointed it at the defendant, saying, 'Damn you, I am going to kill you,' or words to that effect; and that the defendant was then in his yard, and unarmed; and that he then went into the house, and got his gun, and came back into the yard, and shot said York; then said defendant can not invoke the doctrine of self-defense."

The defendant excepted to this charge, and also to the refusal of the following charges, asked by him in writing:

(1.) "If the jury believe from the evidence that James York made threats against the defendant, they may look to these threats as a circumstance tending to show that said York, at the time he was killed by the defendant, was the aggressor."

(2.) "The jury may look to the threats made by said York against the defendant, if there were such threats, as a circumstance which tends to show an ill-feeling entertained by said York; and the jury may look to this ill-feeling as a circumstance tending to show that said York was the aggressor when he was shot by the defendant."

(3.) "A man's house is his castle, and he is not required to retreat when attacked at his house; and if the jury believe from the evidence that James York went to the home of the defendant, at his father's house, for the purpose of bringing on the difficulty, and refused to leave when ordered or requested by the defendant to do so, and made demonstrations towards the defendant indicating an intention to bring on a difficulty, and drew his pistol, and pointed it at the defendant; and that the defendant believed from such demonstra-

[Watkins v. The State.]

tions that his life was in danger; then the defendant had the right, under such circumstances, to shoot and take the life of James York, if he honestly believed that such course was necessary in order to save his life."

(4.) "If the jury believe from the evidence that the deceased threatened to take the life of the defendant, and afterwards came to the defendant's house, and made such demonstrations towards him as to cause a reasonable apprehension that he was going to put such threats into execution; then the jury may justify defendant in killing deceased."

(5.) "If the jury, from all the evidence in this case, have a reasonable doubt of the defendant's guilt, they can not find him guilty as charged; and if they believe from the evidence that James York went to the defendant's house for the purpose of attacking him, or provoking a difficulty with him, this is a circumstance to which the jury may look to engender this doubt."

(6.) "If the jury believe from the evidence that the deceased was trying to marry the defendant's sister, and had been forbidden to come on the premises, but afterwards went there on several occasions; the jury may look to his going as a circumstance or fact, in order to determine who brought on the difficulty."

(7.) "If the jury believe from the evidence that the defendant fled after he had killed the deceased, and that he voluntarily returned and gave himself up for trial; the jury may look to the latter circumstance to explain his flight, and to show that it did not result from his consciousness of guilt."

(8.) "If the jury believe from the evidence that the defendant was standing in his yard when he shot the deceased, he was not required to retreat while standing in his own yard; and if the jury further believe that the deceased drew his pistol, and levelled it on the defendant, as if to fire on him,—the defendant had a right to anticipate him and fire first."

Wm. P. Chitwood, for the appellant, cited *Ezzell & Walker v. State*, 54 Ala. 165; *Wood v. State*, 50 Ala. 145; *DeArman v. State*, 71 Ala. 351; *Rogers v. State*, 62 Ala. 170; *Oliver v. State*, 17 Ala. 599; *Roberts v. State*, 68 Ala. 515; *Burns v. State*, 49 Ala. 370; *Jones v. State*, 76 Ala. 16.

[Watkins v. The State.]

WM. L. MARTIN, Attorney-General, for the State, cited *Breden v. State*, 88 Ala. 20; *Hussey v. State*, 86 Ala. 34.

McCLELLAN, J.—It does not affirmatively appear from the order setting a day for the trial of the defendant, and directing the summoning of special jurors and the service of a copy of the *venire*, &c., on the defendant, that it was made during the week in which the trial was to be, and was had. The order itself should show the day on which it was made, and not leave this fact to ascertainment from other parts of the record, or by inference from its own text. The failure of the order to affirmatively show the date on which it was entered, will not, however, avail the defendant on appeal, if, as in this case, and that of *Breden v. State*, from same court, it can be ascertained with certainty from the record in the court below that the order was made during the week for which the trial was fixed. With this fact thus shown, there was no error in directing that the special jurors "*drawn and ordered summoned*," with the petit jurors organized "for the present week" of the court, should constitute the *venire* for defendant's trial, and that the sheriff should serve a copy of such *venire* on the defendant, one entire day before the trial. Acts 1886-7, p. 151; *Breden v. State*, 88 Ala. 20.

The objection of defendant to going into trial, his plea in abatement, and demurrer to the indictment, all of which proceeded on the assumption that the indictment was against "Forrest *Wathims*," instead of "Forrest Watkins," and that it employed the word "*oforethought*" instead of the word "aforethought," were properly over-ruled. An examination of the original indictment, which accompanies this record under an order of the trial court, demonstrates that the assumption is not supported by fact. We have no difficulty or hesitancy in reaching the conclusion, from an inspection of the paper, that the indictment charges that "Forrest *Watkins* unlawfully and with malice *aforethought* killed James York," &c.

Deceased was on his mule when shot. The precise point at which he fell from the mule became a pertinent inquiry, as tending to fix the relative positions of the parties at the moment of the fatal shot, as to which the evidence was conflicting. A witness who arrived on the scene soon after the shooting, indeed before the wounded man was taken from the ground, was allowed, against defendant's objection, to state that he saw, two or three steps from where York was lying,

[Watkins v. The State.]

a mashed place in the sand, "which looked like where a man's shoulder had struck the ground." There was no error in this.—*S. & N. R. R. Co. v. McLendon*, 63 Ala. 266; *Perry v. State*, 87 Ala. 30.

Not only were the relative positions of the parties at the time of the shooting pertinent to the issues in the case, but the position or attitude of the person of deceased with reference to the defendant at the time of the shot became a matter of relevancy and controversy in the case. In this connection, it was clearly competent for the prosecution to put in evidence an overcoat, shown to have been worn by deceased when he was shot, through which several bullets had entered the body of deceased.—*Holley v. State*, 75 Ala. 14. What the solicitor did or said in connection with introduction of the overcoat in evidence, is not presented for our consideration. The court instructed the jury at the time, that what the solicitor said and did with respect to the coat, was not evidence, and should not be considered by them; the solicitor withdrew his remarks, and no exception whatever in this connection was reserved.

There is evidence in this record which tends to support every hypothesis of the charge given at the request of the State. Several witnesses testified, that York rode up to the gate of the defendant, and pulled out his pistol, and pointed it at said defendant, saying, "Damn you, I am going to kill you;" or words to that effect. At that time, defendant was in the yard of his house, and unarmed; but he went into the house, got his gun, came back with it in his hand, and shot York. The charge was, therefore, not abstract. It asserts that, on this state of facts, if believed, the defendant could not invoke the doctrine of self-defense. We do not question the soundness of this proposition. One assaulted in his house, need not flee therefrom. But his house is his castle only for the purposes of defense. It can not be turned into an arsenal for the purposes of offensive effort against the lives of others. It is a shelter, but not a sally-port. A man may stand his ground there, and kill all comers who are, without fault on his part, about to take his life, or to do him great bodily harm. But, if he leaves its shelter, to encounter a danger beyond its precincts, he is in no better attitude, before the law, than if he had come from any other place, and voluntarily entered upon a combat, from the peril of which he was secure but for his own act. It is immaterial that, after he has armed himself, and emerged from his

house, he encounters a necessity to kill to save his own life. Such necessity is, in legal contemplation, of his own creation, and he can not justify under a necessity which his own fault and wrong has contributed to produce.—*Storey v. State*, 71 Ala. 229; *Brown v. State*, 81 Ala. 38; *Cleveland v. State*, 86 Ala. 1; *Parker v. State*, 88 Ala. 6; *Lewis v. State*, 88 Ala. 11; *Kirby v. State*, at present term; *Watson v. State*, 82 Ala. 10; *Dolan v. State*, 81 Ala. 11; *State v. Harman*, 78 N. C. 515.

Of the charges asked by defendant and refused, the first, second, fifth, sixth and seventh were mere arguments, in declining to give which the Circuit Court, as has been very frequently declared by this court, commits no error.—*Hussey v. State*, 86 Ala. 34; *Hawes v. State*, 88 Ala. 38; *Rains v. State, Ib.* 91; *Riley v. State, Ib.* 193; *Carrington v. L. & N. R. R. Co., Ib.* 472; *Kirby v. State, ante,* p. 64.

Charge number three was properly refused, because it was abstract, in that there is no evidence in the case to which the principle which relieves a party assaulted in his own house from the duty of retreat can be applied. It was also bad, in that it pretermits all inquiry as to the fault of defendant in bringing on the difficulty. This charge is probably open to further objections, on the ground of being misleading, or abstract, but those pointed out will suffice to justify the action of the trial court in refusing it.

Charges four and eight were bad, in that they pretermitted all inquiry as to the fault of defendant in bringing on, or participating in the fatal difficulty. That he was in fault in not remaining in his house, the evidence left no doubt. The charge would have authorized his acquittal on the ground of self-defense, notwithstanding he brought on the difficulty by unnecessarily coming out of his house.

Charge eight asserts that, if a man be assailed in his yard, and can avoid the necessity of killing by retreating into his house, he is not required to do so, but may stand and kill. This is not the law. The charge was properly refused.

The judgment of the Circuit Court is affirmed.