# Lee v. The State.

*Indictment for Murder.*

1. *Self-defense, duty to retreat.*—When a person is attacked in his own house, the law does not require that he shall retreat, in order to claim the benefits of the plea of self-defense; but this principle only extends to his business house, or dwelling-house, with so much additional space as is generally used and occupied for the purposes of the dwelling and customary out-buildings, and does not authorize him to stand and shoot because he is on his own land, or land to the exclusive possession of which he is entitled.

[Lee v. The State.]

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The appellant was indicted and tried for the murder of one Monroe Walker, by shooting him with a pistol; and was convicted of manslaughter in the first degree. The evidence, as adduced on the trial, is sufficiently stated in the opinion. After the court, of its own motion, in its general charge, had charged the jury that "the law applicable to the defense of one's castle has no application to this case," and that the "defendant was bound to retreat if he could without being put to disadvantage, rather than take the life of the deceased;" it then charged the jury as follows, at the request of the State's attorney: "Before there can be an acquittal on the ground of self-defense, two essential elements must be found to concur: 1st, there must be a present, impending peril to life, or great bodily harm, either real or so apparent as to create the *bona fide* belief of an existing necessity; and, 2d, there must be no convenient or reasonable mode of escape by retreat, or declining the combat." The defendant excepted to the giving of the portions of the court's general charge, which are copied above, and also to the giving of the charge requested by the State. He then asked the court to give the following written charges, and separately excepted to the refusal to give each of them as requested: (1.) "If the jury believe from the evidence that the defendant was in the possession of a farm, which he had rented; that the defendant had several houses on said premises, one of which was occupied by the family of the deceased at the time of the killing; that the defendant went to the said house on the night of the killing, on a proper errand, and was in such house for a proper purpose; that while the defendant was in said house, the deceased came, knocked on the door, and was admitted, and without fault on the part of the defendant, he was attacked by the deceased; that the defendant retreated from the said house, out on to his own land, and on to the path leading to the house where the defendant lived; and that the deceased rushed out of said house with an iron poker in his hand, and struck at the defendant within striking distance, and was in the act of striking again, and was in a position to do great bodily harm to defendant, when the defendant shot the deceased; then the defendant was not bound to retreat, and had a right to shoot, if it was necessary to protect himself from great bodily harm, or to protect his life."
(2.) "If the evidence shows that the killing occurred on the lands rented by the defendant, and which he was occupying, and that he was attacked in a house which he had let to the deceased; that defendant had retreated from said house, and

was out of said house, and on his own land, on a path leading to his own house, and was attacked again by the deceased; the defendant was not bound to retreat, but had the right to stand and fight, and if necessary to protect his life, or to prevent great bodily harm to himself, the defendant took the life of the deceased, the jury must acquit the defendant." (3.) "That the second element of self-defense (the one as to retreat) as stated in the charge given at the request of the State, can not apply in this case, if the evidence shows that the defendant was on his own lands, that he was attacked there, after having retreated from the house, that he was not in fault in bringing on the difficulty, and that he shot under the reasonable belief of an impending, imperious necessity to preserve his own life or limb."

WATTS & SON, for appellant, cited *Brinkley v. State*, 89 Ala. 34; *Jones v. State*, 76 Ala. 8; *Cary v. State*, 76 Ala. 78.

WM. L. MARTIN, Attorney-General, for the State, cited *Rutledge v. State*, 88 Ala. 85; *Cribbs v. State*, 86 Ala. 613; *Poe v. State*, 87 Ala. 65; *Mitchell v. State*, 60 Ala. 26; *Elland v. State*, 52 Ala. 322; and *Watkins v. State*, 89 Ala. 82.

WALKER, J.—The evidence tended to show the following state of facts: The appellant, Ed Lee, rented a large farm during the year 1890, upon which he resided himself, and a portion of which he sub-rented that year to one Monroe Walker. Lee rented the same farm for the year 1891, and continued to occupy it. Walker made arrangements to work on the plantation of one Westcott for the year 1891, but, with Lee's permission, left his family on the latter's place, until a house could be prepared for them on the Westcott place. After January 1, 1891, Walker had no right on the Lee farm, except to occupy with his family the house thereon until a dwelling could be built for them on the Westcott place. After the first of the year, Walker worked on the latter place, his wife remaining temporarily on the Lee place, and working there as a laborer, and he going and staying there at night when he wished to do so. The house in which Lee lived, was about a quarter of a mile from the house occupied by Walker's family, and was on the same place. About nine o'clock at night on the —— day of February, 1891, Lee went over to the house occupied by the wife of Walker, and was there talking to her, in the presence of her daughter, about some work he wished her to do the next day, when Walker came in, made some exclamation, and grabbed a chair and tried to strike

2

[Lee v. The State.]

Lee. Walker's wife interfered. Lee went out of the house, walked off about fifteen steps, and stopped in a path leading from that house in the direction of the house in which he lived. After Lee got out of the house, Walker's wife locked the door. Walker went to the fire-place, picked up an iron bar used for a poker; then went to the door, pushed his wife out of the way, unfastened the door, and ran out after Lee, and, approaching towards him with the iron bar, was fatally shot by Lee with a pistol. The night was dark, and it was raining at the time. There was no fence around the house in which Walker's wife was staying.

The exceptions to portions of the charge given by the trial court and to the refusal to give the charges requested by the defendant, raise but the single question, as to whether or not it was the duty of the defendant to retreat, after getting out of the house and upon his own land. In behalf of the appellant it is urged, that after he got upon land, the right to the exclusive possession of which was in him, he was not bound to retreat farther, though retreat was entirely practicable, but was entitled to stand his ground and protect himself, even to the taking of life, if he was without fault in bringing on the difficulty. We have not been cited to, nor have we found, any authority to support the proposition, that the fact that one happens to be upon any part of his own land, thereby secures to himself all the rights deducible from the principle which is illustrated by the maxim, that every man's house is his castle. It is familiar doctrine, that in order to entitle a person to the benefits of the plea of self-defense, against the charge of homicide, he must have employed all means in his power, consistent with his safety, to avoid the danger, and avert the necessity of taking life; and he must have retreated, if retreat was practicable.—*Carter v. State*, 82 Ala. 13. In the old books of the law, the phrases, "retreat to the wall," or "retreat to the ditch," were much in vogue, as figurative expressions of the rule, that, in order to avoid the necessity of taking life, combat must be declined so long as the avenues of escape are open. 1 Hale's Pleas of the Crown, 479–483; 1 Russell on Crimes, 661. As one who has been forced to the wall, or to the ditch, can withdraw no farther, the law says he may there stand at bay, and resist assault, even to the taking of life. Upon like principles, a man's dwelling was regarded as the limit of retreat for him. In the turbulence of early times men made their habitations holds of defense, and were often compelled to protect themselves therein. One's dwelling was regarded as his place of refuge. Its sanctity in this regard was fully recognized by the law. A man in his own house was treated as

[Lee v. The State.]

"at the wall," and could not, by another's assault, be put under any duty to flee therefrom.—1 Bishop on Criminal Law, § 858; Kerr on Homicide, § 180; *Brinkley v. State*, 89 Ala. 35. A killing in defense of one's dwelling may be excusable in the eye of the law, when there would be no legal justification for the taking of human life, in like circumstances, to prevent a trespass upon property, not the dwelling-house.—*Carroll v. State*, 23 Ala. 28; *Simpson v. State*, 59 Ala. 1. This shows the solicitude of the law to secure one's abode as a haven of protection for him, and that the peculiar inviolability attaching to a man's habitation does not extend to his other property. It would seem that the special privileges pertaining to a man in his own habitation, are available for his protection only while he is in such space as is usually occupied for the purposes of the dwelling and the customary out-buildings.—*Pond v. The People*, 8 Mich. 150–181. The very circumstance of one being within the precincts of his dwelling, or of his business-house, serves as a warning to deter an assailant from intruding therein. No such evidence as a disposition to avoid combat, or to get out of the reach of danger, is afforded by the conduct of one, who, when assaulted, merely withdraws to his own land, and there halts in a position exposed to attack. Manifestly, he has not availed himself of such shelter and protection as his house affords. He has not sought what is known of all men as an asylum of safety. His act is not calculated to give pause to one in pursuit. The common law would not say that he had gone to the wall. And we can not say that he had fulfilled the duty of retreat. Nothing has been found in the books to indicate that a man, when upon his own land, is to be regarded as at bay, so as to be under no duty to yield further to an assailant, unless he is in his house, or within the curtilage or space usually occupied and used for the purposes of the house. When he is elsewhere upon his own land, the reasons, which excuse him from withdrawing from the place which is to him as his castle and fortress, do not apply.—*Jones v. State*, 76 Ala. 8; *State v. Patterson*, 12 Am. Rep. 212, note. Not until he has reached this place of refuge, can he claim the protection and privileges afforded thereby. When beyond its precincts, though upon his own land, he is under the duty to retreat, when retreat with safety to himself is practicable. This was the purport of the charges to which exceptions were reserved. The charges requested by the appellant are not reconcilable with the conclusion here announced. They were properly refused.

Affirmed.