# Thomas v. The State.

## *Murder.*

(Decided June 17, 1915. Rehearing denied July 19, 1915.
69 South. 315.)

1. *Homicide; Self-Defense; Privilege of Guest.*—Where one was free from fault, and was a lawful guest at a house, invited by the owner or occupant thereof, while in the house in such capacity, the law armed him with the right to defend himself against an unlawful assault from outsiders, and to employ all necessary force to protect his own life or person from grievous bodily harm without the necessity of retreating; under such circumstances the guest is armed with the same right of self-defense as if he were the owner of the house, as to all persons except its lawful occupant.

2. *Same.*—The doctrine that the owner of a house or his invited guest, when unlawfully assaulted therein, may use all necessary force to repel his assailant, without first retreating to avoid the necessity of killing, applies only to the house and not to the yard.

3. *Same.*—Such doctrine is confined to legitimate cases of self-defense, and is not operative where an owner or guest leaves the shelter of a house and voluntarily engages in the combat, since in the law's contemplation, any necessity thereafter to kill is of his own creation.

4. *Same; Instruction.*—Where the evidence tended to show that defendant had killed deceased in the yard of the house, charges based on the theory that defendant was a guest at such house, and entitled to protection as such, were misleading.

5. *Same.*—A charge asserting that if while at the house of his aunt, defendant shot deceased, being himself free from fault, and if at the time of the shooting deceased was attempting to shoot defendant, which defendant saw and knew, he had the right to defend himself by shooting deceased if it reasonably appeared to be necessary in order to avoid great bodily harm, and under the circumstances

[Thomas v. The State.]

defendant was under no duty to retreat, assumed that defendant was in peril from a murderous assault, and ignored the essential principles of the doctrine of impending peril that the circumstances must be such as to impress a reasonable man that he was in peril to life or great bodily harm, and that he honestly believed that he was in such peril, and was therefore properly refused.

6. *Same.*—A charge asserting that if defendant shot to preserve and protect his own life, was free from fault, and at the time a guest at the house of another, he should be acquitted, ignored the principle of present, impending peril to life or great bodily harm, real or apparent, as essential to self-defense.

7. *Same.*—Where the evidence showed that the killing took place in the yard, a charge asserting that under the law and the facts defendant had every right he would have had in his own home to defend himself from assault, provided he was a guest in the house of another at the time of the killing, was invasive of the province of the jury.

8. *Same.*—Such instruction was also faulty as not undertaking to state defendant's right, and as embodying no principle of law.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Henry Thomas was convicted of manslaughter and he appeals. Affirmed.

The facts sufficiently appear from the opinion. The following charges were refused the defendant: (1) If at the time in question the defendant was a guest or visitor in the home of Mary Ann Scott, he was under no duty to retreat, if deceased undertook to shoot him, provided defendant was free from fault in bringing on the difficulty.

(2) While at the home of his aunt as a guest, the defendant had the right to resist any attack, assault, or trespass on the home, or on or toward the defendant in person, using no more force than necessary.

(3) If while at the home of his aunt defendant shot deceased, and defendant was free from fault in bringing on the difficulty, and if at the time of the shooting deceased was undertaking to shoot defendant, and defendant then saw and knew this, then defendant had the right to defend himself by shooting deceased. If it then

and there reasonably appeared to defendant to be necessary so to do in order to avoid great bodily harm, under circumstances defendant was under no duty to retreat.

(4) Under the law and facts in this case the defendant had every right he would have had in his own home, provided he was a guest or visitor in the home of Mary Ann Scott at the time in question.

(5) On the law and the facts of this case the defendant was under no duty or obligation to retreat, provided he was free from fault in bringing on the difficulty, and at the time of the shooting defendant was a guest or visitor at the home of Mary Ann Scott.

(6) If defendant shot to preserve or protect his own life, was free from fault in bringing on the difficulty, and at the time was a guest or visitor at the home of Mary Ann Scott, then he should be acquitted.

(7) If at the time he shot defendant was in danger of death or great bodily harm, and was free from fault in bringing on the difficulty, and did not willingly enter into the difficulty, and was a visitor or guest at the home of Mary Ann Scott, then he should be acquitted.

C. D. CARMICHAEL, for appellant.

W. L. MARTIN, Attorney General, and W. H. MITCHELL, Assistant Attorney General, for the State.

BROWN, J.—(1) The homicide for which the appellant was tried and convicted occurred at the home of Mary Ann Scott, an aunt of the defendant, and the evidence adduced on the trial showed that another woman, whose name was Savannah, lived in the house with Mary Ann, and that the defendant visited them frequently, and while there is no positive proof of the fact, the evidence was sufficient to afford an inference that defendant was there on the implied invitation of the

[Thomas v. The State.]

owner of the house, or by prearrangement with some of its lawful occupants, and therefore was a guest at the house. If the defendant was a guest of the owner or occupants of the house, there by prearrangement with them or on their invitation, while in the house in that capacity the law armed him with the right to defend himself against an unlawful assault from outsiders, he being free from fault, and to employ all necessary force to protect his own life or his person from grievous harm. For this purpose and under these circumstances, he was armed with the same rights of self-defense as if he had been the owner of the house, as to all persons except its lawful occupant; in other words, to that extent this house was his castle for the purpose of defense, and if without his fault he was assaulted there by an intruder, the law imposed on him no duty to retreat therefrom, but he had the right to stand his ground and defend himself even to the taking of the life of his assailant. —*Crawford v. State,* 112 Ala. 1, 21 South. 214; *Jacobs v. State,* 146 Ala. 103, 42 South. 70; *Carroll v. State,* 23 Ala. 28, 58 Am. Dec. 282; *Watkins v. State,* 89 Ala. 82, 8 South. 134.

(2, 3) This doctrine only applies to the house, and the yard is not within its protection. In the case of *Watkins v. State, supra,* the court said: "Charge 8 asserts that, if a man be assailed in his yard and can avoid the necessity of killing by retreating into his house, he is not required to do so, but may stand and kill. This is not the law."

And in the same case: "One assaulted in his house need not flee therefrom. But his house is his castle only for purposes of defense. It cannot be turned into an arsenal for the purposes of offensive effort against the lives of others. It is a shelter, but not a sally port. A man may stand his ground there, and kill all comers who

are, without fault on his part, about to take his life, or to do him great bodily harm. But, if he leaves its shelter, to encounter a danger beyond its precincts, he is in no better attitude before the law than if he had come from any other place, and voluntarily entered upon a combat, from the peril of which he was secure but for his own act. It is immaterial that after he has armed himself and emerged from his house he encounters a necessity to kill to save his own life. Such necessity is, in legal contemplation, of his own creation, and he cannot justify under a necessity which his own fault and wrong has contributed to produce."—*Watkins v. State, supra; Sanford v. State,* 2 Ala. App. 81, 57 South. 134; *Gibson v. State,* 126 Ala. 58, 28 South. 673.

"The reason of the rule is said to be that 'the law regards a man's house as his castle, or, as was anciently said, his tutissimum refugium, and, having retired thus far, he is not compelled to yield further to his assailing antagonist. * * * When he has reached this refuge, he may stand at bay, and may turn on and kill his assailant, if this be apparently necessary to save his own life; nor is he bound to escape from his house in order to avoid his assailant.—*Jones v. State,* 76 Ala. 8, 16. "— *Watts v. State,* 177 Ala. 31, 59 South. 270; 1 Hale's P. C. 486; *Storey v. State,* 71 Ala. 329.

In *McGhee v. State,* 178 Ala. 4, 59 South. 573, the court, speaking by ANDERSON, J., thus applied this doctrine. "Charges A, B, and C invade the province of the jury. They assume that the defendant was under no duty to retreat, if the first shot killed deceased. It may be true that the defendant was under no duty to retreat when the first shot was fired, if he was, as he testified, in the crib when he fired same; but the charge assumes that the defendant's testimony on this point was true, when, in fact, it was disputed by the state's evidence.

[Thomas v. The State.]

\* \* \* If the shooting was in the open and in the barn lot, where both parties had the right to be, the defendant was not, as a matter of law, relieved of the duty to retreat simply because he controlled the premises. \* \* \* Of course, if the defendant was in the crib when he fired the fatal shot, and the deceased was the aggressor, the defendant was, so to speak, against the wall, and could not retreat."

There is an expression in *Lee v. State,* 92 Ala. 15, 9 South. 407, 25 Am. St. Rep. 17, which asserts that the grounds around the dwelling usually occupied and used for the purposes of the house are within the protection of the rule excusing from the duty to retreat, but this expression is clearly dictum, and is not supported by the authority cited to sustain it—the case of *Pond v. People,* 8 Mich. 150. The building there in question is referred to as the "nethouse," situated some 30 feet from the other house, and was used as sleeping quarters by the servants of the accused. The court held that this was a part of the dwelling house. This dictum is referred to in the supplementary opinion in the case of *Goodwin v. The State,* 102 Ala. 100, 15 South. 571, but this feature of the opinion was not pertinent to the facts of that case or the question under consideration.

(4) The evidence shows without conflict that the defendant killed the deceased; Vince Spurlin, by shooting him with a shotgun, the entire charge entering the body of the deceased under the point of the shoulder blade, making a wound "about the size of a dollar," ranging diagonally through the body. The defendant's own testimony shows that the deceased had threatened to kill him twice previous to this occasion if he continued to visit the woman "Savannah;" that defendant got to the house of Mary Scott about 5 o'clock in the afternoon, and deceased got there between 8 and 9 o'clock; that deceased

came up to the house on the west side of the house and stopped at the yard fence. At this time the defendant was sitting on the front steps on the south side of the house unarmed, and where he could not see the deceased nor deceased see him. He testified that the first he knew of deceased's presence was when he heard deceased talking to "Savannah," and deceased asked her if defendant was there. She then went into the house, and deceased called to the defendant, and defendant left the steps and went out to the fence where the deceased was standing, when, according to the defendant's own story, the following altercation occurred between them: "He asked me how was it that every time he came by there he found me there. I told him it was my kinpeople, and that I had always been around there to see them. He said, 'Did not I tell you once that if I ever caught you and that woman talking together I would kill you?' and he pulled out his knife and tried to cut me over the fence, and I ran off backward from him."

The defendant testified that he then ran around the house two or three times with the deceased following him; that he then went in the house and secured a gun, came back into the yard, and met the deceased at the corner of the house, when the deceased drew a pistol, and defendant shot him. Outside of the defendant's own testimony, there is no positive evidence that deceased was armed with a pistol, and there was evidence sufficient to afford an inference that he was not so armed. The defendant's own evidence shows that the deceased did not attempt to draw a pistol or shoot him until he (defendant) had gone into the house and secured the gun and returned to the yard with it, and some of the testimony in connection with the location and range of the wound had tendencies going to show that defendant

was pursuing the deceased when he encountered the danger that he relies on as the necessity for his act.

In view of the evidence and its tendencies as stated above, charges 1, 2, 3, 5, 6, and 7 were well refused, as they possessed misleading tendencies. If the defendant had retreated into the house, and there remained, and the deceased had pursued him into the house, his right, if a guest of the house, to there remain and defend himself, would have been clear; but, as we have shown, this doctrine did not relieve him from the duty to retreat after the defendant left the house.

(5) Charge 3 was also faulty in that it assumed that defendant was in peril from a murderous assault, and ignored the principle essential to the doctrine of apparent impending peril—that the circumstances must be such as to impress a reasonable man that the defendant was in impending peril of losing his life or suffering grievous bodily harm, and that defendant entertained the honest belief that he was in such peril.—*Matthews v. State,* 192 Ala. 1, 68 South. 334.

(6) Charge 6 also ignores the principle that present impending peril to life or grievous bodily harm, either real or apparent, is essential to self-defense.

(7, 8) Charge 4 was invasive of the province of the jury, and, furthermore, it did not undertake to state what the defendant's rights were, and embodied no principle of law.—*James v. State,* 12 Ala. App. 16, 67 South. 773.

We find no error in the record, and the judgment is affirmed.

Affirmed.