(79 South. 394)

KUHN v. STATE.   (7 Div. 526.)

(Court of Appeals of Alabama.   April 9, 1918. Rehearing Denied June 4, 1918.)

1. HOMICIDE ⬤⇒112(2) — SELF-DEFENSE — PROVOKING DIFFICULTY.

Evidence that after altercation, defendant having gone into the house and brought out a gun, deceased said he had one of those things, and reached up to the seat of his wagon, whereupon defendant shot, does not entitle him to invoke the doctrine of self-defense.

2. CRIMINAL LAW ⬤⇒807(1)—INSTRUCTIONS— ARGUMENTATIVENESS.

Requested charges, being argumentative, are properly refused.

3. CRIMINAL LAW ⬤⇒829(1)—INSTRUCTIONS— REQUESTS COVERED.

Requested charges, being covered by charges given, are properly refused.

4. WITNESSES ⬤⇒330(1) — IMPEACHMENT — CROSS-EXAMINATION—LIMITATION.

State's witness having more than once testified in her cross-examination that she was scared and did not remember the details of the difficulty or exact location of wagon or parties, objection was properly sustained to questions as to whether lapse of memory was the result of fright.

5. CRIMINAL LAW ⬤⇒450 — EVIDENCE — CONCLUSION OF WITNESS.

Objection is properly sustained to a question calling for a conclusion which it was the province of the jury to draw from the evidence.

6. HOMICIDE ⬤⇒174(2) — EVIDENCE — GUN WADS.

Gun wads found in the wagon or on its footrest were properly received as tending to support the state's theory that deceased was in the wagon when he was shot.

7. CRIMINAL LAW ⬤⇒364(3)—EVIDENCE—RES GESTÆ.

Declarations of defendant after he had left the scene of the homicide and gone into the house were not admissible as part of the res gestæ.

Appeal from Circuit Court, Calhoun County; Hugh D. Merrill, Judge.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Joseph Henry Kuhn was convicted of murder, and appeals. Affirmed.

Ross Blackmon and W. W. Whiteside, both of Anniston, for appellant. F. Loyd Tate, Atty. Gen., and David W. W. Fuller, Asst. Atty. Gen., for the State.

BROWN, P. J. The defendant was indicted for the murder of Robert Lewis, was tried and convicted of murder in the second degree and sentenced to a term of 12 years in the penitentiary as a punishment for the offense.

The homicide occurred on Sunday morning in June, 1917, on Chestnut street in the city of Anniston, immediately in front of the defendant's residence. The deceased was at the time engaged in delivering ice to the customers of the Polar Ice & Coal Company, and defendant was one of such customers.

The evidence offered by the state tended to show that the defendant engaged the deceased in an altercation with respect to the delivery of ice at the defendant's residence, resulting in abusive language used by both parties; that the defendant went into his house, procured a gun, came back into the front yard, and shot the deceased as he was attempting to drive away, the shot taking effect in the back of the deceased's neck, one of the shot entering the spinal cord, and producing instant paralysis of all parts of the body below where the shot entered. The facts and circumstances attending the difficulty, according to the defendant's theory, are detailed by him, testifying as a witness in his own behalf, and stated in the bill of exceptions, as follows:

"He was on the porch when Lewis came up with the ice wagon. It was close to about 7 o'clock, early in the morning, after breakfast. When the wagon came up, he went out and asked him for a nickel's worth of ice. Lewis sawed the ice off. He gave the little negro the money, and he carried the ice around the house. That he was not armed when he went out there. He was in his shirt sleeves and bareheaded. When the boy came back he gave Lewis the money and the tongs. Then he asked Lewis how it was that he missed getting his ice, and told him that he worked in the steel mill, and had to work mighty hard, and that it was hot work, and he wanted a drink of ice water when he got home at night. Lewis told him it was a sort of out of the way place, and he would bring it if he could get it down there; that there was a field of corn beyond his house, and his house was the last one on the street. That after he told him that he would get there if he could, he told him he would report him to Mr. Mallory if he didn't. Mr. Mallory is the manager of the ice company. Bob Lewis was driving a Polar Ice & Coal Company wagon. Lewis replied to Kuhn's statement, that he would tell him what he told his wife: 'Report and be damned; I don't give a damn for the job.' That that was the negro that he shot, and that he then said to the negro. 'Do you mean to use that kind of language to my wife?' and Lewis said, 'Yes; and I can use the same damn language to you.' That the negro then brought up the tongs and followed him to the sidewalk. That he ran in the house and got his gun. When he returned with the gun the negro was standing on the sidewalk in front of the house. That there was no obstruction, and he could have shot him then, but he didn't want to. That when he came out with the gun the negro said: 'I ain't scared. I have got one of them damn things myself. I got a damn gun myself.' The negro then reached up in front seat of the wagon; that he didn't give the negro a chance to shoot him."

One of defendant's witnesses, his stepson, Rollins, according to the bill of exceptions, testified:

"He heard Mr. Kuhn say to Bob Lewis: 'I haven't got my ice for a few days. I wish you would continue to bring it. I work in the steel plant, and it is hot work, and I want a cool drink when I come home at night.' Bob Lewis said: 'This is a kind of out of the way place, and I will get it here whenever I can.' Mr. Kuhn then said: 'I want to get my ice. If you can't bring it down here I will have to report it.' Bob Lewis said: 'I say to you as I did to your wife, Report and be damned. I don't give a damn for the job anyhow.' That he heard it, and was very certain that was what Bob Lewis said to Mr. Kuhn. That Mr. Kuhn then said to Bob Lewis, 'Do you mean to say that you used those words to my wife?' Bob Lewis replied, 'Yes; and I say the same damn words to you.' That the negro then threw up his ice tongs and started at Mr. Kuhn. Mr. Kuhn started toward the house, and went into the house, and came out with his gun. That when Mr. Kuhn came out of the house the negro was standing on the edge of the sidewalk. That when Mr. Kuhn came out of the house with his gun, Bob Lewis said: 'I don't give a damn for your gun. I have got one here myself.' That he then went toward the wagon, threw the tongs over in the wagon, and reached under the seat for something. That he, of course, could not see under the seat, and that he did not know whether he had a pistol there or not. Mr. Kuhn was on the steps at the time. That he thinks there are four steps, and that he was standing right about the bottom of the steps. His stepfather shot the negro. That he reached under the seat for something. The negro pulled up in the wagon immediately when the gun shot."

[1] There was no evidence more favorable to the defendant than that quoted above, and on this evidence he was not entitled to invoke the doctrine of self-defense. Watkins v. State, 89 Ala. 82, 8 South. 134; Thomas v. State, 13 Ala. App. 50, 69 South. 315; Brewer v. State, 160 Ala. 66, 49 South. 336; Campbell v. State, 185 Ala. 17, 64 South. 320; Reese v. State, 135 Ala. 13, 33 South. 672.

[2, 3] Charges 1 and 4 were properly refused because they were argumentative, and the propositions of law sought to be stated therein were given to the jury in charges 1, 2, 4, and 7.

All of the other charges except charge 12 relate to the doctrine of self-defense, and were properly refused for the reason above stated.

Charge 12 was covered by the charges given, and also by the oral charge of the court.

[4] The state's witness Mrs. Tibbett testified more than once during her cross-examination that she was scared and did not remember the details of the difficulty, nor the exact location of the wagon or the situation of the parties at the time defendant fired the shot, and the objections of the solicitor to the questions eliciting testimony as to whether

or not the lapse of memory was the result of fright were properly sustained. It was the province of the jury to weigh her testimony in the light of the circumstances. Dennis v. State, ante, p. 115, 75 South. 707.

[5] The question propounded to the witness McIntyre on cross-examination by defendant's counsel, to which the court sustained an objection, called for a conclusion which it was the province of the jury to draw from the evidence and the objection was properly sustained. Dennis v. State, supra.

[6] The gun wads found in the wagon or on the footrest of the driver had some tendency to support the state's theory that the deceased was in the wagon when he was shot, and they were properly received in evidence. Mitchell v. State, 94 Ala. 68, 10 South. 518; Walker v. State, 139 Ala. 56, 35 South. 1011; Underhill's Cr. Ev. § 47.

[7] The declarations of the defendant after he had left the scene of the homicide and gone into the house were not admissible as a part of the res gestæ. Hickman v. State, 12 Ala. App. 22, 67 South. 775.

We find no reversible error in the record, and the judgment is affirmed.

Affirmed.