(115 So. 420)
## LAWLER v. STATE.   (8 Div. 669.)

Court of Appeals of Alabama.   Feb. 14, 1928.

A. H. Carmichael, of Tuscumbia, for appellant.

330

Charlie C. McCall, Atty. Gen., for the State.
Brief did not reach the Reporter.

BRICKEN, P. J. ▮ In this case the undisputed evidence discloses that Jake Lawler, the deceased named in the indictment, met his death by having been struck upon his head with the rear gear of a truck wagon, and that this appellant, defendant below, struck the blow or lick. The difficulty, resulting in the death of Jake Lawler, brother of the defendant, occurred at the home of one Ed Grissom, where a number of persons had gathered for a dance. The defendant was convicted of murder in the second degree, and his punishment fixed at imprisonment in the penitentiary for a term of 15 years. As stated, there was no denial by defendant that he killed his brother by striking him with the implement above mentioned. He struck one blow only, and this he claimed was in self-defense. On the question of self-defense, in this case, the element of retreat is not involved, as the defendant was a guest in the dwelling house where the killing occurred, and therefore was under no duty to retreat. Crawford v. State, 112 Ala. 1, 21 So. 214. In that case the Supreme Court said:

"A guest in a dwelling house is entitled to the protection the law affords to the owner or more permanent occupant. He may repel trespasses in and upon the house, or repel assaults, actual or menaced, as if he was under his own roof and within his own doors."

See, also, Simmons v. State, ante, p. 126, 113 So. 466.

▮▮ The court, we think, ruled correctly in sustaining objection to question propounded by defendant to his witness, Ed Grissom, to "Tell the jury whether or not you had requested Tom (meaning the defendant) to assist you in keeping quiet there." There could be no request or other assurance of witness which would authorize the defendant to take the life of the deceased. If the law should justify the accused in the commission of the act complained of, it would of necessity be upon the theory of self-defense; that is to say, in this case, upon the fact that the defendant was in imminent danger, real or apparent, of suffering death or grievous bodily harm by the deceased, and, further, that he was wholly free from fault in provoking or bringing on the difficulty. The evidence sought by the question could shed no light whatever upon either of the above-mentioned propositions, and the court properly so held.

▮▮ There were several improper questions propounded by the state to defendant upon his cross-examination seeking evidence, which, even under the broad latitude of cross-examination, was inadmissible and illegal. Defendant's objections to these questions should have been sustained, and the court erred in not doing so. These questions related to intent, purpose, and motive of the accused as to certain acts of his in connection with the alleged commission of the offense complained of. Under elementary rules of evidence, a defendant cannot state his uncommunicated belief, motive, or intention, in order to justify himself in committing an act. This rule works both ways, as the matter is here presented, and the court should not have forced defendant, over his proper and timely objections, to give answer to questions seeking to ascertain with what motive, intent, or purpose he did certain things, or tried to do certain things upon the occasion in question. This was not a legitimate line of inquiry, and the objections should have been sustained. The law imposes upon the jury the duty to infer the motive, belief, or intention from the facts and circumstances in the case. A witness cannot testify to such matters. Some of the questions here referred to were as follows:

"You went out there voluntarily and got into it, didn't you?" "You picked it up to hit Jake with?" "When he made his strike at Hosea you prepared to hit him, didn't you?" "Did you undertake to catch him?" "Did you try?"

The insistence by counsel for appellant, in this connection, we think is tenable. In brief it is contended:

"It was not his duty to undertake to catch the deceased or to try to catch him. The manner of the question and its necessary answer was very hurtful to defendant. The words 'Did you catch him—did you try?' appealed mightily to the imagination of the jury, and the fact that he was compelled to say he did not undertake to catch him and did not try to catch him weighed heavily against defendant."

▮▮ The court denied defendant's motion for a new trial. On the hearing of this motion, the scope of inquiry, as well as some of the evidence, was unusual. The wide range indulged is not confined to usual rules governing in like matters. The main insistence upon the hearing of the motion for new trial was the alleged improper conduct of the jury in arriving at a conclusion and rendering their verdict. In order to sustain this insistence, and thereby impeach the verdict of the jury, resort was had to the evidence of different members of the jury who tried the case. All this was allowed without objection, and had relation to what took place in the jury room between the jurors while

engaged in their deliberations in arriving at a verdict. A juror is not allowed to testify as to occurrences in the jury room during their deliberations, nor as to the influence of internal or external events upon the verdict returned by them, in order to impeach such verdict, for public policy forbids a juror from impeaching the verdict of a jury of which he is a member. It has been held, however, that a juror is competent to testify to extraneous facts which may have influenced the verdict of the jury. Martin v. State, 216 Ala. 160, 113 So. 602, 606; Ala. Fuel & Iron Co. v. Rice, 187 Ala. 458, 463, 65 So. 402. Upon another trial these questions will probably not again arise. Certainly, what Jim Lawler, brother of the defendant, thought of the case as well as his desire or wish that his brother (defendant) should receive severe punishment, could have no place in this trial or in the deliberations of the jury either as to the guilt or innocence of defendant or the severity of his punishment.

We have hereinabove held specifically that this defendant having been shown, by the undisputed evidence, to have been a welcome guest of Ed Grissom, at whose dwelling house this unfortunate and fatal difficulty occurred, was under no duty to retreat, and that this usual element of self-defense did not apply in this case. In addition to the authorities above cited on this point, see, also, Madry v. State, 201 Ala. 512, 78 So. 866; Suell v. Derricott, 161 Ala. 259 (twentieth headnote), 49 So. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Walker v. State, 205 Ala. 197 (fourth headnote), 87 So. 833; Thomas v. State, 13 Ala. App. 50 (first headnote), 69 So. 315. The court throughout this trial manifestly labored under the erroneous impression that this defendant was under the duty to retreat in order to sustain his plea of self-defense. The oral charge to the jury specifically so stated, and, while there was no exception to the oral charge, the defendant requested several special written charges on this question. These were refused, and in their refusal the court committed error to a reversal also.

For the errors indicated, the judgment in this case is reversed, and the cause remanded.

Reversed and remanded.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.