(121 So. 432)
### McNUTT v. STATE. (8 Div. 768.)

Court of Appeals of Alabama. Feb. 5, 1929.

Rehearing Denied Feb. 12, 1929.

44

Almon & Almon, of Decatur, R. L. Almon and E. B. Downing, both of Moulton, and A. A. Griffith, of Cullman, for appellant.

Charlie C. McCall, Atty. Gen., J. W. Brassell, Asst. Atty. Gen., and John R. Sample, Circuit Solicitor, of Hartselle, for the State.

BRICKEN, P. J. This appellant admittedly killed Charlie Pruitt by shooting him with a gun, and for said killing the grand jury indicted him charging murder in the first degree. The trial resulted in a conviction for murder in the second degree, and his punishment was fixed at imprisonment in the penitentiary for 18 years. This appeal is from the judgment of conviction duly pronounced and entered in accordance with the verdict of the jury.

It is first insisted by appellant that the court committed reversible error in striking his motion to quash the indictment on the grounds that the court was organized before 11 o'clock at the beginning of the term in which the indictment was found. There is no semblance of merit in this insistence. It is evident that this motion was based upon the provisions of section 6672 of Code 1923. This section is regulatory only, and merely directory; it expressly provides that "no order or judgment taken in violation of this section shall be declared * * * void." From the record it affirmatively appears that the court below met on Monday, August 6, 1928, and that the indictment was regularly returned into open court on August 10, 1928. The controlling section of Code 1923, as to

the terms of the circuit court, is section 6667, which provides that the circuit courts of the several counties of the state shall be open for the transaction of any and all business, or judicial proceedings of every kind from the first Monday in January to and including the last Saturday in June of every year; and from the first Monday after the 4th of July to, and including, the last Saturday before Christmas Day of every year. Under the provisions of this statute, the circuit court of Lawrence county—as well as all other counties in the state—remained continuously open during the entire year except for the two periods of time noted in the statute.

■ The next point of decision insisted upon as error is based upon the action of the court in overruling defendant's motion to quash the venire on the grounds of a noncompliance of the court's order in fixing the number of jurymen to constitute the venire to try this case. There are innumerable decisions of the Supreme Court of this state, covering a period of many years, to the effect that where there appears a duplication of a juror's name on the venire to try a capital case, thus reducing the number of jurors fixed by the order of court, the venire must be quashed upon proper motion. In other words, these cases hold, where it appears that the name of one (or more) juror is duplicated, appearing in one place as a regular juror, and in another as of those specially drawn for the trial, it is error which will justify quashing the venire. *However, this rule no longer prevails.* Evans v. State, 209 Ala. 563, 566, 96 So. 923, 925. In this case the Supreme Court said:

"The trial court did not commit reversible error in putting the defendant on trial by the venire drawn, notwithstanding the duplication on the list of the name of Jas. A. Mitchell. This error doubtless occurred in filling the box, and, notwithstanding the venire was one name short, it contained 49 more names than the minimum number fixed by law, and from aught appearing 30 or more appeared, and it was not necessary to augment the number unless reduced below 30. The authorities relied upon in the opinion of Thomas, J., except perhaps the Jackson Case [171 Ala. 38, 55 So. 118], were under older jury laws; but the law of 1909 and 1919 indicated a legislative desire to avoid reversals by errors of this character should it appear that there was no error in the order of the court, and that the defendant was tried by what constituted a lawful venire, that is, had a venire of 50 or over in the first instance, and the list from which he was to strike contained 30 or more names. Courts are not only intended to administer justice, but should be also conducted for practical purposes, and to our mind it would be a legal travesty to reverse this case solely upon the ground that the name of Mitchell was duplicated, notwithstanding the venire contained 99 names, and the defendant had every means of securing a fair and impartial jury.".

This recent decision (quoted) is conclusive of the insistence here made that the court erred in overruling the defendant's motion to quash the venire which was based upon the grounds that the names of jurors Robert Hurst, and W. Knouff Parker each appeared twice upon the venire thus reducing the number of jurors on the venire from which the jury was to be selected to 98 jurors and the order of the court fixed the number at 100 jurors. Under the Evans Case, supra, there was no error in the court's rulings in this connection, and the insistence of appellant cannot be sustained.

Some of the decisions affected, on this point, by the Evans Case, supra, are as follows: Roberts v. State, 68 Ala. 515; Darby v. State, 92 Ala. 9, 9 So. 429; McQueen v. State, 94 Ala. 50, 10 So. 433; Wilkins v. State, 112 Ala. 55, 21 So. 56; Hall v. State, 130 Ala. 45, 30 So. 422; Noel v. State, 161 Ala. 25, 49 So. 824; Zininam v. State, 186 Ala. 9, 65 So. 56. This notation is made for the the benefit of the bench and bar of the state.

■ The court's ruling in allowing in evidence the shirt worn by deceased at the time he was shot and killed by this appellant was without error. The shirt had been properly identified, a portion thereof (the collar) was perforated by the bullets which took the life of Pruitt, and thus under nearly all of the decisions was admissible in evidence. Certainly so under the rule laid down in Moye et al. v. State, 22 Ala. App. 456, 117 So. 153. Certiorari denied Id., 217 Ala. 561, 117 So. 154. But see Hyche v. State, 22 Ala. App. 176, 113 So. 644.

The remaining question on this appeal relates to the ruling of the court which, in effect, held, as a matter of law, that this appellant at the time of the killing complained of was not within his dwelling house, nor the curtilage thereof. The defendant set up self-defense, but contended that he was under no duty to retreat and that he was within the curtilage of his dwelling house at the time of the fatal difficulty. The court charged the jury that the duty to retreat was upon the defendant in order to sustain his plea of self-defense. We are of the opinion that under the undisputed evidence in this case the lower court correctly ruled in this connection. The undisputed evidence shows that this defendant was a hundred yards or more from his dwelling house at the time he fired the fatal shot (the defendant himself testified that it was a hundred or a hundred and ten steps); that in the space between defendant's dwelling house, to where the fatal difficulty occurred, there were "large trees and open woods." And also there was a road, traveled generally by the public, between the

46

garden, which was fenced, and the dwelling house. The mere fact that the defendant was in his garden would not change the condition, for if this were true the same insistence would prevail if the garden of the accused was a mile or more from his dwelling house. It is permissible for a trial court to hold as a matter of law that a given house, structure, or place is or is not within the curtilage. Cook v. State, 83 Ala. 62, 3 So. 849, 3 Am. St. Rep. 688; Fisher v. State, 43 Ala. 17; Washington v. State, 82 Ala. 31, 2 So. 356; Madry v. State, 201 Ala. 512, 78 So. 866; Walker v. State, 205 Ala. 197, 87 So. 836; Craven v. State, 22 Ala. App. 39, 111 So. 767; Holland v. State, 11 Ala. App. 164, 65 So. 920. Under the rule announced in these cases, and under the undisputed facts of this case, I think the lower court properly ruled that the duty of retreating was upon the defendant.

■ The refused charges which properly stated the law applicable to the facts of this case were covered by the court's oral charge.

The foregoing opinion expresses the views of the writer and is concurred in by my associates, except upon the question of the court's ruling relative to the scene or place of the homicide not being within the curtilage of the dwelling house. Upon this question the view of the majority is expressed by SAMFORD, J., and is as follows:

SAMFORD, J. ■ The rulings of the court on this question, in effect, held as matter of law that the defendant, at the time of the homicide, was not within the curtilage of his own dwelling. The evidence for defendant tends to prove that defendant, at the time of the homicide, was in his garden, and on the question of whether or not this garden was within the curtilage, there was testimony that: "My father's house was about one hundred yards from the garden. It was east of the garden and the garden was west of the house and the gate that opened out of the garden opened towards the house, and in going to the house from the garden you came out of the gate across a private road going through the field and from there on up to the house. There was no fence around the house and yard, it was open and there were some large trees or grove between the house and the garden, all used as the yard." "The spring was between the house and the garden and the spring and the house and the garden were all there close together, and paths from the spring to the house and from the spring to the garden and from the house to the garden. And this ground around here was used for a yard and the garden was used as a garden to grow vegetables for the family. There was only one gate to the garden. It was on the southeast corner next to the house."

Many cases arise in which it can be affirmed as a matter of law that a given house or spot is or is not within the curtilage of a dwelling. Such a case is Lee v. State, 92 Ala. 15, 9 So. 407, 25 Am. St. Rep. 17, where the facts as there disclosed placed the defendant on his own land, but at a place entirely separate from his dwelling. There are many other cases similar to the Lee Case, supra. But, under our decisions, *curtilage* usually includes "the *yard*, or *garden*, or field which is near to and used in connection with the dwelling. In Ivey v. State, 61 Ala. 58, it is said: "It is not necessary either should be surrounded by an inclosure. It is propinquity to the dwelling, *and the use in connection with it* [italics ours], for family purposes, which the statute regards, and not the fact of its inclosure." Ivey v. State, supra; Cook v. State, 83 Ala. 62, 3 So. 849, 3 Am. St. Rep. 688; Bishop Stat. Crimes, par. 278; 2 Bish. Crim. Law (7th Ed.) par. 104 et seq.; Washington v. State, 82 Ala. 31, 2 So. 356. There is an expression in Thomas v. State, 13 Ala. App. 50, 55, 69 So. 315, which seems to express a contrary view to the above, but the Supreme Court in Madry v. State, 201 Ala. 512, 78 So. 866, expressly limits the decision in Watkins v. State, 89 Ala. 82, 8 So. 134, so as to practically overrule the Thomas Case on this point. The Ivey Case, supra, has never been overruled. In line with that case and others above cited we hold that the testimony in this case was of that indeterminate character which should have been passed on by the jury, and that the circuit court committed error in holding as matter of law that the defendant's garden was not within the curtilage of his dwelling.

For the errors in the rulings touching this point, the judgment is reversed and the cause is remanded.

Reversed and remanded.

BRICKEN, P. J., dissents.